**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED
JAMES BONINI
CLERK

2008 APR 24 P 12: 38

| | |
|---|---|
| **KENDALL HOLDINGS, LTD.,** | ) **CASE NO:** |
| **d/b/a PHPK Technologies,** | ) |
| 4329 Reynolds Drive | ) C2 08 0390 |
| Hilliard, Ohio 43026 | ) |
| | ) |
| Plaintiff, | ) **JUDGE:** |
| | ) |
| v. | ) **JUDGE MARBLEY** |
| | ) **MAGISTRATE JUDGE KEMP** |
| **EDEN CRYOGENICS LLC,** | ) |
| 8445 Rausch Drive | ) **JURY DEMAND ENDORSED HEREON** |
| Plain City, Ohio 43064 | ) |
| | ) |
| and | ) |
| | ) |
| **STEVEN L. HENSLEY** | ) |
| 6496 Oharra Road | ) |
| Galloway, Ohio 43119 | ) |
| | ) |
| and | ) |
| | ) |
| **JIM MITCHELL** | ) |
| 14747 Maple Ridge Road | ) |
| Milford Center, Ohio 43045 | ) |
| | ) |
| and | ) |
| | ) |
| **ONE OR MORE JOHN DOE** | ) |
| **DEFENDANTS** | ) |
| Addresses Unknown | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Kendall Holdings, Ltd., d/b/a PHPK Technologies ("New PHPK") brings this Complaint

against Eden Cryogenics LLC ("Eden"), Steven L. Hensley ("Hensley"), Jim Mitchell

("Mitchell"), and John Doe(s) (collectively "defendants") and alleges as follows:

**INTRODUCTION**

1.     This case involves the defendants' theft and misuse of New PHPK's confidential and proprietary information and trade secrets, and willful infringement of New PHPK's registered copyrights. New PHPK is an industry leader in the supply of cryogenic and high-vacuum equipment and components (collectively "New PHPK Products") to the global market. Central to New PHPK's business, and its very existence, is the highly confidential and proprietary information it has developed, and the trade secrets it owns. Among that confidential information and trade secrets are approximately 2000 design and engineering drawings ("shop drawings") of New PHPK Products which serve as the blueprint to the manufacturing of New PHPK's products. Each drawing contains detailed information, such as exact dimensions, tolerances, radii, surface finishes, and a drawing or drawings of the subject New PHPK Product to scale. Such drawings are necessary to enable fabricators to manufacture the New PHPK Product properly so that it complies with published performance specifications.

2.     Hensley formerly served as New PHPK's President, until New PHPK terminated his employment for cause. New PHPK will present this Court with testimony from several witnesses who were ordered by Hensley, before his departure from New PHPK, to copy all of New PHPK's shop drawings of New PHPK Products and provide them to Hensley. Once his employment was terminated, rather than return New PHPK's property, Hensley stole those shop drawings and other New PHPK confidential information for his personal, ill-begotten use and advantage.

3.     Mitchell was also a New PHPK employee until his employment was terminated at approximately the same time as Hensley. Mitchell assisted New PHPK by preparing and revising the confidential shop drawings of New PHPK's Products. It is now undisputed fact that

Mitchell assisted Hensley in his theft of New PHPK's confidential information and trade secrets. In discussions prior to the filing of this Complaint, Eden's and Hensley's counsel confirmed that Mitchell stole approximately 200 confidential shop drawings from New PHPK, and gave those shop drawings to Eden and Hensley for their illegal use.

4.     In a new employer and business partner Eden, Hensley and Mitchell found a willing accomplice in their scheme. Together, Eden, Hensley, and Mitchell used New PHPK's confidential information and trade secrets to set up a business that sells cryogenic and high vacuum equipment and components in head-to-head competition with New PHPK. Aided by New PHPK's stolen shop drawings, defendants were able to save the considerable time and expense of developing their own engineering or shop drawings and "hit the ground running," offering a product line in the cryogenic and high vacuum field that was identical to the product line of New PHPK. Consequently, defendants have since robbed New PHPK of its business advantages, and caused confusion in the industry.

5.     The examples of defendants' theft of New PHPK's assets are obvious and incontrovertible. For instance, as part of Eden's marketing materials, Eden displays a shop drawing purporting to be an Eden developed, designed, and owned product. (*See* Eden Brochure, p.3, attached hereto as Exhibit 1). In reality however, the shop drawing pictured *is a New PHPK shop drawing of a New PHPK product*, which defendants insignificantly altered by replacing the New PHPK name with the name of an Eden affiliate. *The shop drawing pictured in Eden's marketing brochure is identical to New PHPK's shop drawing stolen by defendants*, so much so that when the New PHPK shop drawing and purported Eden shop drawing are superimposed, *the lines of the two drawings coincide.*

3

6.    Indeed, there is no longer any question as to whether defendants have misappropriated New PHPK's confidential information and trade secrets.  That is because *defendants admit that they have in their possession approximately 200 New PHPK confidential drawings, and that Hensley conspired with Mitchell to secure Eden's possession of these New PHPK drawings.*

7.    Defendants went on to rob numerous proprietary pieces of confidential information developed by New PHPK, from its manufacturing, assembly, and quality control procedures, its confidential customer lists and pricing strategies, and even to New PHPK's catalog.  The Eden catalog is virtually identical in structure and sequence of topics and ideas to New PHPK's parts and components catalog.  Further, numerous tables and charts of engineering data, unique to New PHPK parts and components, appearing in the New PHPK parts and components catalog, have been copied verbatim from and appear in the Eden catalog. *Defendants' parts and components catalog even mistakenly includes a drawing of a New PHPK product, taken from the New PHPK catalog, which depicts a New PHPK product instead of the corresponding Eden product.  The drawing appears in the Eden catalog next to a photograph of the corresponding Eden product, which is slightly different in appearance from the product depicted in the New PHPK product drawing.*

8.    The net effect of all of the defendants' reprehensible activities is that they have created, overnight, using New PHPK's own proprietary information, a business which took New PHPK and its predecessor years to nurture, develop, and design.  Eden, Hensley, Mitchell, and the remainder of their as yet unidentified co-conspirators must be brought to justice for these acts, and New PHPK must be made whole.

## PARTIES

9.      Kendall is an Ohio limited liability company with its principal place of business at 4329 Reynolds Drive, Hilliard, Ohio 43026. Kendall is doing business as PHPK Technologies (referred to throughout this Complaint as "New PHPK").

10.     PHPK Technologies (referred to herein as "New PHPK") is reported as a fictitious name with the state of Ohio and has its principal place of business at 2111 Builders Place, Columbus, Ohio 43204.

11.     Upon information and belief, Eden is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business at 8445 Rausch Drive, Plain City, Ohio 43064.

12.     Upon information and belief, Hensley is a citizen of the state of Ohio, and he resides at 6496 Oharra Road, Galloway, Ohio 43119.

13.     Upon information and belief, Mitchell is a citizen of the state of Ohio, and he resides at 14747 Maple Ridge Road, Milford Center, Ohio 43045.

14.     Defendant(s) John Doe(s) are persons or entities who have engaged in unlawful and tortious conduct, or have entered into a conspiracy with the other defendants to engage in unlawful or tortious conduct.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this controversy presents a real and substantial federal question, and original and exclusive jurisdiction over certain subject matter pursuant 28 U.S.C. § 1338(a) as aspects of this controversy arise under an Act of Congress relating to copyrights.

16.     This Court has personal jurisdiction over the defendants.  Upon information and belief, Eden transacts business in this State and is located within this judicial district.  Upon information and belief, Hensley and Mitchell reside within this judicial district.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1)-(3) because defendants reside in Ohio and in this District, a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this District, and/or defendants may be found in this District.  Venue in this District is proper pursuant to 28 U.S.C. § 1400(a) because this action arises partially under an Act of Congress relating to copyrights, and one or more defendants reside or may be found in this District.

## BACKGROUND

18.     New PHPK is a major supplier of cryogenic and high-vacuum equipment and components to the global market.   It supplies large, turnkey cryogenic and high-vacuum systems, space simulation chambers, cryostats, cold boxes, high vacuum chambers, helium refrigeration systems, sub-coolers, cryogenic valves, bayonet couplings, filters and compressors, as well as parts and components of the forgoing.

19.     New PHPK's predecessor, PHPK Technologies, Inc. ("Old PHPK"), was founded in 1991.  Old PHPK devoted considerable resources to design and develop its broad product line, including the employment of highly-qualified teams of engineers to produce the aforementioned shop drawings of its parts and components.  Neither New PHPK nor Old PHPK shared those highly confidential drawings with the general public, its customers, or anyone else outside the PHPK family.  Only their teams of employees and trusted, third party fabricators had or have access to those drawings.

20.     New PHPK takes care to preserve the confidentiality of its drawings because a competitor, as here, could use them to produce virtually identical products without first investing

6

the enormous time, energy, and capital expenses incurred by New PHPK and its predecessor. Misappropriation by a competitor of New PHPK's confidential drawings would allow that competitor to compete unfairly against New PHPK because the competitor would not have to recoup the massive research and development costs needed to produce New PHPK's shop drawings.

21.     On March 20, 2004, Kendall purchased all of Old PHPK's assets, both tangible and intangible, and began doing business as PHPK.  A major component of that purchase was Old PHPK's most valuable assets – its intellectual property (including copyrights), trade secrets, and good will embodied in New PHPK's products and components created through years of hard work and innovation.

22.     New PHPK's purchase of the Old PHPK assets also included all advertisement, marketing materials, and intellectual property Old PHPK had developed over the years.  This includes the copyrights in the catalog entitled *PHPK Technologies Incorporated* which carries a copyright notice on each page and is protected by federal copyright law.  The catalog, whose copyrights are now owned by New PHPK, represents a substantial investment in the creation, composition and arrangement of text, tables and charts.  The structure, sequence of ideas, and arrangement and content of charts and tables are original with Old PHPK.

23.     New PHPK's purchase also included the Old PHPK confidential customer lists. With the exception of a few of its most prominent customers, Old PHPK chose not to identify its customers to the general public.  That policy, which has also been adopted by New PHPK, prevents competitors from attempting to steal its customers by using confidential customer lists.

24.     Finally, New PHPK's purchase of the Old PHPK assets included confidential and proprietary pricing information.  Old PHPK did not publish its prices for disclosure to its

7

competitors or the general public. The pricing information is not found in the catalog. New PHPK continues that practice. Instead, New PHPK customers request bids or price quotes for products, and New PHPK provides its customers with such bids or price quotes. As competitors are unable to refer to New PHPK prices in determining how to price their own products, that confidential and proprietary pricing information is quite valuable to New PHPK.

25.     Following its purchase of the Old PHPK assets in March 2004, New PHPK retained Hensley to serve as its President. Hensley had previously been the President of Old PHPK since that company's inception. New PHPK also hired Mitchell to assist with preparing and revising the confidential shop drawings that New PHPK had purchased from Old PHPK.

26.     Unfortunately, soon after the acquisition, it became apparent that Hensley's performance as New PHPK's President was materially inadequate. For example, Hensley's management style was extremely confrontational. Several employees complained about Hensley yelling at them and berating them in the workplace. Some employees even threatened to quit their jobs if New PHPK did not take corrective action. As a result, Hensley was terminated from his employment with New PHPK in or about November, 2004. At approximately the same time, New PHPK terminated Mitchell's employment.

27.     Upon information and belief, in or about January, 2006, just over a year after being terminated from New PHPK, Hensley founded Eden. Not coincidentally, Eden is in the same business as New PHPK, the supply of cryogenic products and equipment.

28.     Upon information and belief, Eden is a subsidiary of Eden Technologies, PLC ("Eden Australia"), an Australian Corporation.

*New PHPK learns that Eden has produced and disseminated catalogs that are copied from the New PHPK catalog.*

29.     During late 2007 and early 2008, New PHPK first noticed that some of its long-standing customers were purchasing from Eden, and that Eden was underbidding New PHPK on projects.

30.     Naturally curious as to the nature of Eden's business and products, New PHPK reviewed Eden's catalog entitled *EDEN CRYOGENICS LLC pioneering the future*.   Eden disseminated that catalog to consumers in the cryogenic market, including virtually all of New PHPK's customers.   New PHPK's review of the Eden catalog found that it is substantially similar to the New PHPK catalog with respect to the layout of the catalog, the arrangement of each section and the order of information within each section.   The part drawings are very close – if not identical – to the corresponding part drawings appearing in the PHPK catalog.   The tables of dimensions are identical.   The New PHPK catalog was published during Mr. Hensley's tenure at Old PHPK, and Mr. Hensley had access to it.   The New PHPK catalog contains a prominent copyright notice on each page.

31.     Perhaps the most egregious instance of copying (and indisputable proof that Eden and Hensley have unauthorized access to and have used the New PHPK drawings) appears in the Eden catalog on page 73.   On that page, Eden advertises a product it calls "EVA7," which corresponds to New PHPK's vacuum seal-off valve operator model VR-47 that appears on page 3-5 of the New PHPK catalog.   Yet, *the drawing in the Eden catalog purporting to be of the Eden EVA7 actually is a drawing of the New PHPK model VR-47*.   The drawing in Eden's catalog clearly shows the annular groves of New PHPK's VR-47 valve operator rather than the corresponding knurled surface of the EVA7 actuator, shown in a photograph in the Eden catalog next to the drawing.   Unwittingly, in their haste to copy New PHPK's copyrighted catalog to

9

make and distribute their own infringing catalog, *defendants used a New PHPK product to depict a virtually identical Eden product.*

32.     The remainder of the Eden catalog is replete with comprehensive, non-literal similarities in the selection, discussion, structure and layout of information, combined with fragmented literal similarities in text. A few examples are as follows:

(a)     The Eden catalog page laying out contact information ("PIONEERING THE FUTURE" p. 2) tracks page I-1 of the New PHPK catalog ("PERFORMANCE PARTNERS"). Both publications give telephone, fax, email, physical address, and website information in similar format. At the bottom of the page, both publications identify the companies as sustaining members of the Cryogenic Society of America;

(b)     Page 3 of the Eden catalog ("EVOLUTION AND KNOW-HOW") follows page I-2 of the New PHPK catalog ("EXPERIENCE & INNOVATION"). For instance, the New PHPK catalog begins with the statement that "[s]ince June 1991, a new name has been forging the future of the cryogenic industry." The Eden catalog, in turn, begins by stating "[b]eginning in January, 2006, a new name emerged to lead the future of technology and equipment for the cryogenic industry."

(c)     The Eden catalog page entitled ("FACILITIES CAPABILITY") includes the paragraph    headings    "DESCRIPTION:,"    "SIZE:,"    "EXPANSION:"    and "FEATURES:" that not only are identical to the paragraph headings on page I-5 of the New PHPK catalog, but are also in the same order. In some cases, the text under each of the identical headings (e.g., "EXPANSION") is almost verbatim. The "FEATURES" heading in the Eden catalog even includes bullet points that correspond to the bullet points under the "FEATURES" heading of the New PHPK catalog;

(d)     The introductory material of the Eden catalog ends with a "MISSION STATEMENT" on page 5 that corresponds to the "QUALITY POLICY" appearing on page I-7 of the New PHPK catalog. Both pages are formatted in exactly the same manner – text under a bolded and capitalized heading contained within a centered rectangular box. The first paragraph in the New PHPK catalog concludes by indicating that New PHPK "is committed to providing the highest quality cryogenic and vacuum equipment … and **to ensure customer satisfaction**" (emphasis supplied). In turn, the first paragraph in the Eden catalog concludes by stating that every customer's questions or concerns "will be given the attention required **to ensure customer satisfaction**" (emphasis supplied);

(e)     The Eden catalog section describing vacuum insulated piping corresponds to the vacuum insulated piping section in the New PHPK catalog. The Eden section includes a discussion beginning on page 9 that covers the same points, discussed in paragraphs that are only slightly reworded from corresponding paragraphs in the New PHPK catalog, beginning at page 1-1. Both sections end with a set of review points (Eden's headed by

the title "Standard System Engineering Reviews Include:" on page 10 and New PHPK's headed by "Standard System Engineering includes a review of the system for:" (page 1-3) that are substantially the same, often beginning with the same terms (e.g. "Pressure Drop" and "Installation") and are presented in the same bullet point list format;

(f) Page 12 of the Eden catalog section headed "ENGINEERING DESIGN AND TECHNICAL SUPPORT" corresponds to the section headed "Engineering Support" on page 1-4 of the New PHPK catalog. Again, the bullet points in the Eden catalog (pages 12-13) correspond to the bullet points in the New PHPK catalog (pages 1-4 to 1-6) in ordering of information and layout. For example, a bullet point on page 1-5 of the New PHPK catalog states that "PHPK requires all vacuum jacketed piping to be fabricated from new materials with chemical and physical mill certifications." The corresponding Eden bullet point states that "Eden Cryogenics requires all materials to be new, with mill certification which includes chemical and physical properties.";

(g) The Eden catalog also contains a section titled "TYPICAL ELEMENTS IN A VACUUM INSULATED DISTRIBUTION SYSTEM" (pages 14-15) that copies New PHPK's "TYPICAL VACUUM JACKETED TRANSFER SYSTEM" (page 1-7). Both show a detailed isometric drawing of a "typical" installation showing similar components. The table on page 16 of the Eden catalog is identical in presentation of information to the table on page 1-7 of the New PHPK catalog. This is followed by similarities in the bullet points on Eden's page 17, corresponding to the bullet points on New PHPK's page 1-8. For example, the first bullet point in the New PHPK catalog advises customers, "[d]uring the planning stages of the system, allow adequate time to engineer, design, and fabricate a custom piping system." The corresponding first bullet point in the Eden catalog advises customers to "[a]llow adequate time for bid, engineering design, fabrication, and installation."; and

(h) The tables, section headings and section heading numbering scheme in the Eden catalog's "PIPING SPECIFICATIONS" section (pages 25-34) are in most cases identical, and the accompanying text is similar, to that in New PHPK's "Specifications" section on pages 1-13 to 1-21. For an example of the virtually identical format and text, one only needs to look at the beginning of each section. The New PHPK catalog (page 1-13) begins "SCOPE 1.0, The American National Standard Code for Pressure Piping, ANSI/ASME B31.3 Chemical Plant and Petroleum Piping's latest edition, establishes the requirements for engineering, design, fabrication, and testing of piping used in liquid and gas cryogenic service." The Eden catalog (page 25) is almost a carbon copy. It begins "SCOPE 1.0, The American National Standard Code for pressure piping, the ASME B31.3 Chemical Plant and Petroleum Piping latest edition, establishes the requirements for engineering, design, fabrication, and testing for piping used in liquid and gas cryogenic services."

33. Throughout the rest of the Eden catalog, the part drawings are substantially similar from the parts appearing in the New PHPK catalog. The tables of dimensions are

identical.  In some cases, the only distinguishing factor in the Eden catalog is that the identical dimensions are displayed in decimal form in the Eden catalog rather than in fraction form as in the New PHPK catalog.

34.     The examples outlined above are just a sample of Eden's blatant theft of New PHPK's intellectual property.  When comparing the earlier-produced New PHPK catalog to the Eden catalog, the only reasonable conclusion is that the Eden catalog was copied from the New PHPK catalog.

***New PHPK discovers that Hensley retained confidential and proprietary New PHPK design and engineering drawings, customer lists, and pricing information, and Defendants are using such information to unfairly compete against New PHPK.***

35.     Given the foregoing examples of defendants' unabashed copying of New PHPK's copyrighted work product (not to mention the publication of a drawing of one of New PHPK's own products), New PHPK investigated defendants' actions.  The results of that investigation put to rest any doubts that defendants are competing against New PHPK by using improperly obtained New PHPK confidential information.

36.     For instance, during the course of the investigation, New PHPK employees revealed that, not long before Hensley was terminated, Hensley ordered them to copy all of New PHPK's confidential and proprietary product engineering and design drawings.  Hensley also ordered New PHPK employees to place paper copies of the engineering and design drawings in a file cabinet for Hensley's continued access and use.  Therefore, Hensley possessed nearly 2000 New PHPK confidential and proprietary product engineering and design drawings (the "Drawings") on his personal laptop computer and/or in paper form at the time of his termination, and he clearly did not delete or return the Drawings after he was terminated.

37. *Defendants now admit that they do in fact have confidential New PHPK Drawings in their possession.* When confronted with the similarities of Eden's products to New PHPK's products, and with the clear copying of New PHPK's catalog, defendants were forced to admit that they have in their possession *approximately 200 New PHPK Drawings*. Defendants also admit that they obtained these numerous New PHPK Drawings through a scheme orchestrated by Hensley and Mitchell, whereby Hensley hired Mitchell into Eden, and thereafter Mitchell provided Eden and Hensley with the Drawings he had stolen from New PHPK. Despite these admissions, **defendants have not returned New PHPK's Drawings, and, upon information and belief, continue to use New PHPK's confidential trade secrets for their own unauthorized benefit.**

38. Given the immense and incalculable value of the Drawings, New PHPK takes great steps to ensure that no one outside of the PHPK family can access them. The Drawings are not published or available to the public, New PHPK's customers, or even New PHPK's non-affiliated suppliers and subcontractors. They are stored in paper form at New PHPK's principal place of business where only New PHPK employees, those who would need them for New PHPK business purposes, can gain access. Furthermore, the electronic form of the drawings can only be accessed on New PHPK's password protected network.

39. Hensley has used the Drawings obtained in his capacity as President of New PHPK and its predecessor, and through his scheme with Mitchell, to start a competing company (Eden) for the purpose of producing and selling competing cryogenic products. Given that the Eden products are virtually identical to the Drawings, it would be practically impossible for Eden to have produced its product line in the timeframe it did without reference to and reliance upon the Drawings. Engineering drawings produced from scratch, or by reverse engineering the

13

PHPK parts Eden wanted to copy, would require a massive investment in time and trained personnel to accomplish, neither of which Eden possessed. Further, Eden could not have replicated in its drawings the intricate details from the New PHPK drawings that are also included in the Eden drawings, even if given sufficient time and engineering talent.

40.    Additionally, Hensley had access to New PHPK's customer lists and pricing information while employed by New PHPK and its predecessor. Upon information and belief, Hensley retained such information after his termination and defendants are now using that information to market Eden's products (developed using New PHPK's confidential and proprietary design and engineering drawings) in competition against New PHPK.

41.    Specifically, Eden has contacted many New PHPK customers and bid or quoted prices just below the price New PHPK charged for its almost identical product at the time Hensley was terminated. As aforementioned, New PHPK does not publish or advertise its prices to the general public. It places bids or gives quotes to specific customers who request such bids or quotes. Given the fact that the New PHPK pricing is not publicly available, Eden's pattern of bidding slightly below the New PHPK price at the time of Hensley's termination is not coincidental. Rather, it is indicative of Eden and Hensley's misappropriation of New PHPK's customer lists and pricing information.

*New PHPK suspects that Eden is acting in concert with its parent corporation to violate federal antitrust laws, and New PHPK intends to explore those topics in discovery.*

42.    In some instances, given the market material costs and labor costs projections, upon information and belief, Eden is marketing and selling its products below its own costs of production.

43. If Eden is marketing and selling its products below cost, that fact would represent Eden's intent to drive New PHPK out of the market, monopolize the market, and then raise its prices after its competition has been eliminated.

44. Upon information and belief, Eden Australia is a participant and/or co-conspirator in this illegal scheme. Should discovery reveal the facts necessary to confirm New PHPK's strong suspicions, New PHPK shall seek leave from the Court to amend its complaint to add causes of action against Eden Australia for unfair competition and antitrust violations under federal and state law, including but not limited to claims under Section 2 of the Sherman Act and Section 2(a) of the Robinson-Patman Act.

### *Despite New PHPK's demands, Eden has refused to cease and desist from engaging in its unlawful conduct.*

45. New PHPK has put Eden and Eden Australia on notice of Eden's illegal conduct. A true and accurate copy of the Cease and Desist Letter dated February 25, 2008 and sent to Eden is attached as Exhibit 2. A true and accurate copy of a February 26, 2008 letter sent to Eden Australia is attached as Exhibit 3.

46. Eden responded in a February 28, 2008 letter from its attorney stating that it would investigate the allegations raised in the Cease and Desist Letter and respond to those allegations by April 11, 2008 - **almost six weeks later**. A true and accurate copy of the February 28, 2008 correspondence from Eden's attorney to counsel for New PHPK is attached as Exhibit 4.

47. New PHPK then informed Eden of what it should have already known, that a delay of six weeks is completely unacceptable given defendants' conscious and concerted effort to destroy New PHPK's business using New PHPK's own confidential information and trade

secrets. While Eden relented to a more timely meeting to discuss the defendants' actionable conduct, those meetings have not produced the necessary assurances and guarantees of remedial action to undo the damage defendants have done. Thus, New PHPK was left with no choice but to bring this action.

## COUNT I – COPYRIGHT INFRINGEMENT

48.     New PHPK hereby adopts and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

49.     On March 17, 2008, New PHPK registered the copyright for its catalog with the United States Copyright Office. A true and accurate copy of copyright registration No. TX-6-831-357 is attached as Exhibit 5.

50.     During Hensley's employment by Old PHPK, New PHPK and thereafter, Hensley and other defendants had access to the New PHPK catalog (which was created by Old PHPK and whose copyrights were purchased by and assigned to New PHPK). The Eden catalog is substantially similar to the New PHPK catalog, both on a comprehensive non-literal basis and on a fragmented literal basis. Therefore, the inescapable conclusion is that the Eden catalog was copied from the New PHPK catalog.

51.     Each page of New PHPK's catalog contains a copyright notice in compliance with 17 U.S.C. § 401 that reads: "© 1997 PHPK TECHNOLOGIES INC."

52.     Eden's acts of (i) reproducing the copyrighted New PHPK catalog in the form of the Eden catalog, (ii) distributing copies of the copyrighted New PHPK catalog, in the form of the Eden catalog, to the public by transfer of ownership, and (iii) displaying copies of the copyrighted New PHPK catalog publicly, in the form of the Eden catalog, all without permission

16

or license from New PHPK, constitute infringement of New PHPK's copyrights in its PHPK TECHNOLOGIES INC. catalog in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.*

53.    Eden's acts of infringement were deliberate, willful, malicious, and without regard to New PHPK's proprietary rights.

54.    Eden's copyright infringement has caused, and will continue to cause, substantial damage to New PHPK's business and has diverted New PHPK's trade.

55.    Eden's copyright infringement and the threat of continuing infringement has caused, and will continue to cause, New PHPK repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford New PHPK adequate relief at law for Eden's past acts and continuing acts. New PHPK is entitled to permanent injunctive relief pursuant to 17 U.S.C. § 502, and to an order under 17 U.S.C. § 503 that the infringing copies of the catalog be seized, impounded and destroyed.

56.    In addition, New PHPK is entitled to receive the profits made by Eden from its wrongful acts pursuant to 17 U.S.C. § 504.

57.    New PHPK is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.


### COUNT II - MISAPPROPRIATION OF TRADE SECRETS
### (OHIO REVISED CODE § 1333.61 *ET SEQ.*)

58.    New PHPK hereby adopts and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

59.    Upon information and belief, defendants have wrongfully obtained and used New PHPK's confidential and proprietary information, including but not limited to the Drawings, New PHPK's pricing information, and New PHPK's customer lists.

60. New PHPK's confidential and proprietary information derives independent economic value because it is not generally known to, and is not readily ascertainable through proper means by, others who can obtain economic value from its disclosure. Competitors can use the confidential and proprietary information to offer identical products in the same channels of trade without incurring the costs that New PHPK incurred to research, design, and develop its products, thus giving competitors an unfair competitive advantage.

61. New PHPK's confidential and proprietary information is neither publicly disseminated nor a matter of general public knowledge.

62. New PHPK takes reasonable precautions to prevent its confidential and proprietary information from being made available to the public, including only storing its information in paper form at New PHPK's principal place of business and only allowing electronic access to the information through New PHPK's password protected network.

63. New PHPK's confidential and proprietary information qualify as trade secrets under Ohio Revised Code § 1333.61 *et seq.*

64. Defendants, without consent of or license from New PHPK, have used and are using New PHPK's trade secrets to operate Eden.

65. Hensley has used improper means to acquire New PHPK's trade secrets by taking and using them without consent, knowing that he acquired them by improper means, and breaching his duty to maintain the secrecy of the trade secrets by improperly sharing them with Eden.

66. Mitchell has used improper means to acquire New PHPK's trade secrets by taking and using them without New PHPK's consent, knowing that he acquired them by improper

means, and breaching his duty to maintain the secrecy of the trade secrets by improperly sharing them with Eden.

67.     Defendants' misappropriation of New PHPK's trade secrets has caused and will continue to cause New PHPK irreparable harm for which there is no adequate remedy at law.

68.     Defendants' misappropriation of New PHPK's trade secrets has been intentional, malicious, and in bad faith.

69.     As a result of defendants' misappropriation of New PHPK's trade secrets, New PHPK is entitled to preliminary and permanent injunctive relief with regard to actual and threatened misappropriation, as well as compensatory damages in excess of $75,000.00, and punitive damages in excess of $10,000,000.00.

## COUNT III – COMMON LAW UNFAIR COMPETITION

70.     New PHPK hereby adopts and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

71.     Eden's production of products utilizing New PHPK's trade secrets and Eden's unauthorized use of New PHPK's copyrighted materials to market those products constitutes unfair competition under the common law of Ohio.

72.     Because of Eden's unfair competition, New PHPK has been irreparably damaged. Unless Eden is enjoined, New PHPK will continue to suffer harm to its business for which it has no adequate remedy at law.

## COUNT IV – TORTIOUS INTERFERENCE

73.     New PHPK hereby adopts and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

74.     Defendants have knowingly, willfully and without privilege interfered or attempted to interfere with the existing and/or prospective relations between New PHPK and its customers.   These interferences include improperly using New PHPK's confidential and propriety information without New PHPK's consent to compete with New PHPK and illegally using copyrighted New PHPK material to advertise to customers in New PHPK's market.

75.     Defendants' interference has damaged the relationship between New PHPK and its current and prospective customers.

76.     Defendants' interference is improper and without justification.   It is also deliberate, malicious, willful, wanton, and done with intent to injure New PHPK in its trade and business.

77.     As a result of Defendants' tortious interference with current and prospective business relations, New PHPK has suffered damages and continues to be threatened with imminent and continuing irreparable harm for which New PHPK has no adequate remedy at law.

## COUNT V – UNJUST ENRICHMENT

78.     New PHPK hereby adopts and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

79.     Defendants have been unjustly enriched by their misappropriation of New PHPK's trade secrets, unlawful use of New PHPK's copyrighted material, and deceptive trade practices.

80.     Equity and good conscience require that any benefit obtained by Defendants as a result of their unlawful actions should inure to New PHPK.

81.     As a result of Defendants' wrongful retention of these amounts, New PHPK is entitled to recover damages for unjust enrichment in an amount to be established at trial, but in no event will be less than $75,000.00.

## COUNT VI – CONVERSION

82.     New PHPK hereby adopts and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

83.     New PHPK is the rightful owner of the Drawings, its customer lists, and its pricing information.  The defendants have no right to possess that property.

84.     New PHPK has demanded the return of the Drawings, its customer lists, and its pricing information, but defendants have refused to do so and have thereby converted such property.

85.     As a result of defendants' conversion, New PHPK is entitled to recover damages in an amount to be established at trial, but in no event will be less than $75,000.00.

## COUNT VII – CIVIL CONSPIRACY

86.     New PHPK hereby adopts and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

87.     Defendants Eden, Hensley, Mitchell, and John Doe(s) knew that New PHPK was and is the rightful owner of the Drawings, its customer lists, its pricing information, and the copyright interest in New PHPK's catalog.

88.     Upon information and belief, defendants entered into an agreement and did in fact conspire to intentionally infringe upon New PHPK's copyrighted work product, misappropriate

New PHPK's trade secrets, unfairly compete against New PHPK, tortiously interfere with New PHPK's business relationships, and convert New PHPK's property.

89.     Defendants, individually, jointly, and severally, performed an overt act in furtherance of this conspiracy by, among other things, forming and operating Eden, assisting in Eden's formation or operation, and assisting, facilitating, and/or encouraging Hensley's, Mitchell's, and Eden's unlawful use of New PHPK's trade secrets and tangible and intangible property.

90.     As a result of defendants' civil conspiracy, New PHPK is entitled to recover damages in an amount to be established at trial, but in no event will be less than $75,000.00.

## DEMAND FOR RELIEF

WHEREFORE, New PHPK demands that the Court enter judgment in its favor on its Complaint and against defendants as follows:

1.     That Eden, its officers, agents, servants, employees and all persons acting in concert or participating with Eden, including but not limited to Hensley and Mitchell, be temporarily, preliminarily, and permanently enjoined from:

   a.     selling all products that were created by misappropriating New PHPK's confidential and proprietary design and engineering drawings;

   b.     marketing to any New PHPK customers who were identified by defendants' improper use of New PHPK's confidential customer list and pricing information;

   c.     reproducing, distributing to the public or displaying its catalog that infringes New PHPK's copyrights in its own copyrighted catalog; and

    d.     competing unfairly with New PHPK in any other manner which may be identified through discovery.

2.    That defendants be required to pay New PHPK compensatory damages in excess of $75,000.00 suffered by New PHPK as a consequence of their actions described above or identified in discovery;

3.    That defendants be required to pay New PHPK punitive damages in an amount in excess of $10,000,000.00 to punish defendants for their willful and malicious conduct and deter such conduct from occuring in the future;

4.    That defendants be required to pay New PHPK's costs, expenses and reasonable attorneys' fees in connection with this action; and

5.    Award New PHPK such other relief as this Court deems just and proper.

Respectfully submitted,

_____

Anthony C. White (0062146) (Trial Attorney)
    Anthony.White@ThompsonHine.com
O. Judson Scheaf, III. (0040285)
    Jud.Scheaf@ThompsonHine.com
**THOMPSON HINE LLP**
10 West Broad Street
Suite 700
Columbus, Ohio  43215
Tel:  (614) 469-3200
Fax:  (614) 469-3361

*Attorneys for Plaintiff Kendall Holdings, Ltd., d/b/a PHPK Technologies*

## JURY TRIAL REQUESTED

Plaintiff requests a jury trial of all issues raised by the Complaint which are triable by jury.

By:    _____
Anthony C. White
Trial Attorney for Kendall Holdings, Ltd.,
d/b/a PHPK Technologies

576039.2