IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KENDALL HOLDINGS, LTD.,**
**d/b/a PHPK Technologies,**
        **Plaintiff,**

v.

**EDEN CRYOGENICS, LLC, et al.**
        **Defendants.**

Case No. 2:08-cv-390
**JUDGE EDMUND A. SARGUS, JR.**

## OPINION AND ORDER

This matter is before the Court for consideration of the motion for partial dismissal by defendants Eden Cryogenics, LLC ("Eden"), Steven L. Hensley ("Hensley"), and Jim Mitchell ("Mitchell"). Defendants seek to dismiss six counts of the plaintiff's second amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, defendants move to dismiss Count II (Violation of the Ohio Deceptive Trade Practices Act); Count IV (Breach of Implied Contract of Confidentiality); Count V (Common Law Unfair Competition); Count VI (Tortious Interference); Count VII (Conversion); and Count VIII (Breach of Duty of Loyalty). This motion has been fully briefed and is now ripe for disposition. For the following reasons, the defendants' motion to dismiss will be granted in part and denied in part.

### I.    Background

The plaintiff, Kendall Holdings, Ltd., d/b/a PHPK Technologies ("PHPK"), initiated this action against Eden, Hensley, Mitchell, and John Doe(s), asserting claims for copyright infringement, misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"), unfair competition, tortious interference, unjust enrichment, conversion, and civil

conspiracy. In response to the original complaint, Eden, Hensley, and Mitchell jointly filed a motion to strike portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f). (DE 11). They did not move for dismissal of any of the claims that PHPK asserted in the original complaint.

Before the Court ruled on the motion to strike, PHPK filed its first amended complaint. (DE 21). The first amended complaint also asserted claims for copyright infringement, misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"), unfair competition, tortious interference, unjust enrichment, conversion, and civil conspiracy, but it omitted the portion of the original complaint that the defendants had sought to strike. Thereafter, the defendants withdrew their motion to strike. (DE 22). They then filed an answer to the first amended complaint. (DE 27). Subsequently, they filed an amended answer. (DE 36.) In neither responsive pleading did the defendants seek Rule 12 dismissal of any of the counts that PHPK asserted ins first amended complaint.

By leave of court, PHPK filed a second amended complaint. The second amended complaint reasserted PHPK's claims for copyright infringement, misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"), unfair competition, tortious interference, unjust enrichment, conversion, and civil conspiracy, and it added the following new claims: violation of the Ohio Deceptive Trade Practices Act, breach of implied contract of confidentiality, and breach of duty of loyalty. PHPK seeks injunctive relief, monetary damages, and attorneys' fees.

The defendants jointly filed the present motion to dismiss under Rule 12(b)(6). The defendants contend that the three new claims asserted in the second amended complaint (violation of the Ohio Deceptive Trade Practices Act, breach of implied contract of confidentiality, and breach of duty of loyalty) and three of the claims first asserted in the original

complaint and reasserted in both the first and second amended complaints (conversion, unfair competition, and tortious interference) fail to state a claim upon which relief can be granted.

In response, PHPK contends that, pursuant to Rule 12(g), the defendants have waived the right to seek dismissal of the three claims that were first asserted in the original complaint because the defendants failed to raise a failure-to-state-a-claim defense to these claims in their first Rule 12 motion or their or amended answer filed in response to the first amended complaint. PHPK also contends that that all of the challenged counts state valid legal claims entitling it to relief.

The defendants filed a reply in which they maintain that they are permitted under Rule 12(h) to move for dismissal of any count for failure to state a claim upon which relief can be granted, irrespective of whether they previously sought dismissal at the time they filed their Rule 12(f) motion or their answer or amended answer.

## II. Analysis

As a preliminary matter, the Court first addresses whether the defendants have waived their right to raise a failure-to-state-a-claim challenge to the claims that PHPK first asserted in its original complaint. Federal Rule of Civil procedure 12(g) provides:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ P. 12(g). In turn, as relevant to the motion at bar, subsection (h) of Rule 12 provides:

> Failure to state a claim upon which relief can be granted . . . may be raised:
> (A) in any pleading allowed or ordered under Rule 7(a);
> (B) by motion under Rule 12(c); or
> (C) at trial.

Fed. R. Civ. P. 12(h)(2).

Rule 12(c) governs motions for judgment on the pleadings: "After the pleadings are

3

closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *Beal v. Missouri Pacific R.R.*, 312 U.S. 45 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure (hereinafter Wright & Miller) § 1368, p. 518.

In this case, the defendants filed a motion to strike under Rule 12(f) in response to the original complaint, and they filed an answer and an amended answer in response to the first amended complaint. In none of their filings did they assert a failure-to-state-a-claim challenge to the plaintiff's claims for conversion, unfair competition, or tortious interference, all of which were alleged in the plaintiff's original and first amended complaints. Thus, the failure-to-state-a-claim defense was available to the defendants when they filed their Rule 12(f) motion and when they filed their answer and amended amnswer.

Nevertheless, the defendants are correct that they are not barred from raising the defense under Rule 12(h)(2). Accordingly, although the defendants have denominated their request for dismissal of all of the challenged claims as a Rule 12(b)(6) motion, the Court construes the motion as seeking judgment on the pleadings under Rule 12(c) for the three claims first asserted in the original complaint and reasserted in both the first and second amended complaints (conversion, unfair competition, and tortious interference), and as seeking dismissal under Rule 12(b)(6) for the three claims asserted for the first time in the second amended complaint (violation of the Ohio Deceptive Trade Practices Act, breach of implied contract of confidentiality, and breach of duty of loyalty). The disposition will be no different whether the Court treats the motion under Rule 12(c) or Rule 12(b)(6) because, as discussed in the following section, the standard of review is the same for both.

4

### A. Standard of Review

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). In reviewing either a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them relief." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Thus, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id.* (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require 'detailed factual allegations.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Moreover, "[a]lthough for the purposes of a

5

motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### B. Count II (Violation of the Ohio Deceptive Trade Practices Act)

Count II of PHPK's second amended complaint alleges that Eden has engaged in deceptive trade practices in violation of the State of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq*. Specifically, PHPK claims that Eden has used PHPK's confidential and proprietary information to create a product line that is almost identical to PHPK's product line; that it has produced and distributed a product catalogue that is substantially similar to PHPK's product catalogue and has circulated that catalogue to most of PHPK's clients, thereby causing a likelihood of confusion or misunderstanding about Eden's relationship to, or certification of its products by, PHPK; and that it has represented that its goods have sponsorship, approval, or characteristics that they do not have and that its goods are of a particular standard, quality, or grade, thereby causing a likelihood of confusion or misunderstanding about the source, sponsorship, approval and/or certification of Eden's products.

The defendants contend that, to the extent that this claim seeks redress for Eden's alleged copying of PHPK's catalogue, it is preempted by federal copyright law. Title 17 of the United States Code, Section § 301, the section of the Copyright Act which describes the scope of the Act's preemptive reach, provides in relevant part:

> (a) [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether [ ... ] published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

6

> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to-
>
> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or [ ... ]
>
> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301. In turn, Section 106 provides:

> § 106. Exclusive rights in copyrighted works Subject to sections 107 through 121, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

The United States Court of Appeals for the Sixth Circuit has explained the analysis of preemption under the Copyright Act as follows:

> [A] state common law or statutory claim is preempted if: (1) the work is within the scope of the "subject matter of copyright," as specified in 17 U.S.C. §§ 102,

> 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.

*Wrench, LLL v. Taco Bell*, 256 F.3d 446 (6th Cir. 2001). Thus, determining federal copyright law preemption involves a two-step process. A court must consider, first, whether the disputed work satisfies the subject matter requirement, and second, whether the state law cause or causes of action asserted by the plaintiff satisfy the equivalency requirement. *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 636 (6th Cir. 2001) (abrogated on other grounds by *Reed Elsevier v. Muchnick*, 130 S.Ct. 1237 (2010)). Regarding the equivalency requirement, the Sixth Circuit has stated:

> Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Wrench*, 256 F.3d at 456 (internal citations omitted).

The Sixth Circuit cautions that, in conducting the preemption analysis, courts are to be mindful that the determination of preemption "is highly dependent upon the facts presented and the claims actually pled by the parties." *Id.* Indeed, the published cases from the Sixth Circuit that the defendants cite in support of dismissal involve disposition at the summary judgment stage, not at the pleading stage. *See ATC Distrib. Grp., Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 713-14 (6th Cir. 2005); *Murray Hills*, 264 F.3d 622 (6th Cir. 2001); *Cannon Grp., Inc. v. Better Bus. Bureau*, 250 F. Supp. 2d 893 (S.D. Ohio 2003). In light of the Sixth Circuit's admonition, and given those allegations by PHPK that appear, at least at this stage of the proceedings, to implicate conduct that does not involve the alleged copying of PHPK's catalogue, Count

II is not amenable to dismissal at the pleading stage. Therefore, the defendants' motion will be denied as to Count II.

### C.  Count IV (Breach of Implied Contract of Confidentiality)

In Count IV of its second amended complaint, PHPK alleges that Hensley and Mitchell breached an implied contract of confidentiality. Specifically, PHPK claims that pursuant to an implied term of their employment with PHPK was an obligation not to use trade secrets or other confidential and proprietary information they acquired during their tenure with PHPK for their own benefit, for the benefit of a competitor, or to the detriment of PHPK. According to PHPK, Hensley and Mitchell acquired trade secrets and other confidential and proprietary information in the form of shop drawings, manufacturing, assembly, and quality control procedures, pricing information, and customer lists while employed at PHPK, and then used those protected materials and information for the benefit of Eden, a direct competitor, and to the detriment of PHPK.

The defendants contend that Count IV fails to state a claim upon which relief can be granted. They raise three alternate grounds as the bases for this contention. First, they claim that Ohio law does not recognize breach of implied contract of confidentiality as a cause of action. Second, they argue that even if such a cause of action does exist under Ohio law, the plaintiffs have failed to allege two of the requisite elements of the existence of a contract, specifically a meeting of the minds and consideration. Finally, they contend that Count IV, though framed by PHPK as a contractual claim, is in fact a tort claim that is displaced by the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.67(A). Because the Court concludes, as discussed below, that PHPK has pled tort claim rather than a contractual claim, the defendants' alternative arguments need not and will not be addressed.

The Ohio Uniform Trade Secrets Act provides, in pertinent part:

>	(A)	Except as provided in division (B) of this section, sections 1333.61 to 1333.69 of the Revised Code displace conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.
>
>	(B)	These sections do not affect any of the following:
>
>	(1) Contractual remedies, whether or not based on misappropriation of a trade secret;
>	(2) Other civil remedies that are not based on misappropriation of a trade secret;
>	(3) Criminal remedies, including those in other sections of this chapter, whether or not based on misappropriation of a trade secret.

Ohio Rev. Code § 1333.67(A)-(B). Thus, if Count IV establishes a contract claim, it is not displaced by § 1333.67. If the claim arises in tort, however, the Court must determine whether it seeks a civil remedy that is not based upon misappropriation of trade secrets.

In determining the cause of action that a plaintiff has alleged, courts must look beyond the labels the plaintiff has attached to a claim and examine the substance of the allegations. *Minger v. Wilson*, 239 F.3d 793, 799 (6th Cir. 2001). Ohio courts treat an employee's duty to protect trade secrets and confidential or proprietary information as a cause of action grounded in tort law. *See, e.g., Hoffmann-LaRoche, Inc. v. Yoder*, 950 F.Supp. 1348 (N.D. Ohio 1997) (citing *USM Corp. v. Tremco, Inc.* 710 F.Supp. 1140, 1142 (N.D. Ohio 1988); *Guardian Pest Control, Inc. v. Mulholland*, No. 62350, 1993 WL 204633, at **2-3 (Ohio Ct. App. 1993)); *Wiebold Studio, Inc. v. Old World Restorations, Inc.*, 484 N.E.2d 280, 284 (Ohio Ct. App. 1985).

Moreover, "actions for misappropriation of trade secrets are typically analyzed in terms of breach of a duty of non disclosure [sic]." *Guardian Pest Control*, 1993 WL 204633, at *3. As one Ohio court has explained,

10

> The underlying principles of trade secret law, as noted by Justice Oliver W. Holmes, are not those of property law but the equitable principles of good faith applicable to confidential relationships. The employer who has discovered or developed trade secrets is protected against unauthorized disclosure or use, not because he has a property interest in the trade secrets, but because the trade secrets were made known to the employee in a confidential relationship. *E.I. Dupont de Nemours Powder Co. v. Masland* (1917), 244 U.S. 100, 102, 37 S.Ct. 575, 576, 61 L.Ed. 1016 *Curry v. Marquart* (1937), 133 Ohio St. 77, 79, 11 N.E.2d 868 [10 O.O. 93]; Restatement of the Law, Torts [(1939), Section 757, Comment *b*].

*Wiebold Studio*, 484 N.E.2d at 284.

Given Ohio courts' treatment of the duty of confidentiality as a tort and the analysis of trade secret law under the "equitable principles of good faith applicable to confidential relationships," Count IV is properly viewed as a tort claim. Thus, the question becomes whether Count IV seeks a civil remedy that is not based upon misappropriation of trade secrets. As noted above, PHPK's claim in Count IV is drawn entirely from allegations that, during the course of their employment with PHPK, Hensley and Mitchell acquired trade secrets and confidential and proprietary information that they subsequently used to benefit a competitor and that such use was to the detriment of PHPK. To the extent that Count IV rests upon the misuse and misappropriation of trade secrets, it is displaced by §1333.67 of the Ohio State Trade Secrets Act. Accordingly, the defendants' motion will be granted in part as to Count IV insofar as that count rests upon the alleged misuse and misappropriation of trade secrets.[1]

### D. Count V (Common Law Unfair Competition), Count VI (Tortious Interference), Count VII (Conversion), and Count VIII (Breach of Duty of Loyalty)

PHPK's second amended complaint asserts claims for common law unfair competition,

---

[1] To the extent that Count IV relies upon confidential and proprietary information that is separate from the items and information that PHPK has designated in its second amended complaint as trade secrets, the duty of confidentiality would appear to be subsumed by the claim for breach of duty of loyalty asserted in Count VIII.

11

tortious interference, conversion, and breach of the duty of loyalty. In each of these claims, PHPK alleges that the defendants have wrongfully used unspecified confidential and proprietary information belonging to PHPK. The defendants contend that these claims must fail because §1333.67 of the Ohio State Trade Secrets Act displaces them. The defendants also contend that, to the extent the unfair competition and tortious interference claims are based upon Eden's alleged use of PHPK's catalogue, they are preempted by the Copyright Act.

### 1. Displacement by OUTSA

The OUTSA displaces separate common-law claims if "'the claims are no more than a restatement of the same operative facts' that formed the basis of the plaintiff's statutory claim for trade secret misappropriation." *Thermodyn Corp. v. 3M Co.*, 593 F.Supp. 2d 972 (N.D. Ohio 2008) (quoting *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722, 730 (N.D. Ohio 1999)). According to the defendants, the items and information PHPK has identified as trade secrets also comprise the totality of the confidential and proprietary information that PHPK alleges form the bases for its claims for unfair competition, tortious interference, conversion, and breach of duty of loyalty. Therefore, in the defendants' view, the claims in Counts V, VI, VII, and VIII are nothing more than reallegations of the same operative facts that form PHPK's claim for misappropriation of trade secrets under OUTSA. PHPK disagrees with this characterization.

The items and information that PHPK alleges constitute trade secrets are PHPK's shop drawings; its manufacturing, assembly, and quality control procedures; its pricing information; and its customer lists. Second Amended Complaint, DE 61, ¶ 79. The defendants point to paragraph 9 of the second amended complaint in support of their contention that the confidential and proprietary information that PHPK claims gives rise to Counts V, VI, VII, and VIII is precisely the same as the protected information and material forming the basis of its claim for

misappropriation of trade secrets in Count II.

Paragraph 9 alleges that the defendants "misappropriated numerous proprietary pieces of confidential information developed by PHPK, including its manufacturing, assembly, and quality control procedures, its confidential customer lists and its pricing strategies." Second Amended Complaint, DE 61, ¶ 9. The defendants read this paragraph as stating that the proprietary pieces of confidential information include only the listed items. In other words, the defendants argue that the universe of trade secrets is coextensive with the universe of confidential and proprietary information. PHPK, on the other hand, contends that the proprietary pieces of confidential information include but are not limited to the items listed in paragraph 9. That is, PHPK avers that the universe of confidential and proprietary information is broader than the universe of trade secrets, which is but a subset of the confidential and proprietary information PHPK claims was wrongfully acquired and used. Assuming the truth of the facts alleged, and viewing the factual allegations and inferences drawn therefrom in the light most favorable to PHPK, as is required in determining the motion under consideration, the Court concludes that PHPK's pleadings have stated a plausible basis to support its claims for unfair competition, tortious interference, conversion, and breach of the duty of loyalty irrespective of its claims for misappropriation of trade secrets.

### 2. *Preemption by The Copyright Act*

Regarding the defendants' position that the Copyright Act preempts PHPK's claims for tortious interference and unfair competition, as stated above, courts must remain mindful that the preemption analysis "is highly dependent upon the facts presented and the claims actually pled by the parties." *Murray Hill,* 264 F.3d at 636. Given the factual allegations and the development of the record at this stage of the litigation, these claims are not amenable to

13

disposition on a preemption challenge at the pleading stage.

For the foregoing reasons, the defendants' motion will be denied as to Counts V, VI, VII, and VIII.

## III. Conclusion

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** the defendants' motion for partial dismissal (DE 63). That portion of Count IV that rests upon the misuse and misappropriation of trade secrets is **DISMISSED**.

**IT IS SO ORDERED.**

\_\_\_\_\_9-29-2010_____ _____
**DATED** EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE