IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kendall Holdings, Ltd.,

        Plaintiff,

v.

Eden Cryogenics, LLC, et al.,

        Defendants.

Case No. 2:08-cv-390

JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kemp

## OPINION AND ORDER

This trade secret case is before the court to consider defendants' motion to exclude evidence or argument concerning the plaintiff's claim that the defendants misappropriated trade secrets. The motion is fully briefed. For the following reasons, the Court declines to exclude evidence or argument on the trade secret issue, but it does take this opportunity to clarify what, in the Court's view, plaintiff has asserted to be the trade secrets upon which its claim is based.

I.

The background of the motion can be stated fairly simply. As in most cases where a defendant is alleged to have misappropriated the plaintiff's trade secrets, the defendants in this case have propounded discovery in an effort to determine, as precisely as possible, which trade secrets they allegedly misappropriated. Such a question was included in the first set of interrogatories served on plaintiff back in June of 2008. Because the case was a newly-filed at that point, plaintiff did not purport to make a complete answer, but it did identify one of the defendants' drawings by number which it claimed to have been substantially derived from one of its own. The interrogatory answer also stated that plaintiff "suspects" that confidential and

proprietary pricing and customer information was misappropriated. Over the next several years, this interrogatory answer was not supplemented.

Plaintiff's president was deposed in early 2010. He was asked about the same issue but indicated that, generally, he believed that any process followed by plaintiff constituted a trade secret, even if plaintiff had derived that process from other sources. Because that answer was not particularly useful, plaintiff was asked to provide a supplemental answer to the prior interrogatory asking about trade secrets, and it did so.

In their motion, defendants describe the supplemental interrogatory answer as "impenetrable." They acknowledge that the answer described four categories of products which both plaintiff and defendants manufacture, those being bayonet assemblies, cryogenic valve assemblies, vacuum seal-off valves and associated operators, and cryogenic filters. The answer itself asserts trade secret protection "in the unique combination of characteristics and components that embody the specifications, tolerances, and diagrams that allow a knowledgeable manufacturer to produce" these four products. It goes on to identify the source of the "specifications, tolerances, clearances, data, reference points, dimensions, assembly configurations, alloys and diagrams" used to manufacture these four products as "engineering drawings, analysis, and related literature...." Defendants assert this answer is not particularly helpful because neither of these categories of information are identified with precision.

In early 2011, counsel had further discussions about this definition of plaintiff's trade secret information. Those discussions ultimately resulted in a letter written by plaintiff's counsel on May 3, 2011. That letter states that the information for which plaintiff claims trade secret protection is found on its drawings as well as additional specifications which were identified by

2

document number. Defendants argue that even this additional information is not helpful because, among other reasons, the document numbers given for the specifications contain much information beyond specifications, such as operating policies, safety programs, report forms, and other matters. It is defendants' position that, at the end of this lengthy process through which plaintiff has identified its trade secrets, defendants are no more able to defend against that claim then they were at the beginning of the case because they still do not know with any specificity what information plaintiff claims trade secret protection for, nor how much of the information they allegedly misappropriated. They assert that the consequences of plaintiff's failure to make this information sufficiently specific should be the exclusion of any evidence or argument about their alleged misappropriation of trade secrets.

II.

There are, of course, a range of sanctions available to the Court under F.R.Civ.P. 37(b) and (d). These sanctions include an order directing that certain matters be taken as established for purposes of the case, an order prohibiting the recalcitrant party from introducing designated matters in evidence, and an order either dismissing the case or entering a default judgment. While the Court may, under the correct circumstances, impose a sanction as drastic as precluding a party from presenting any evidence at all in support of a particular claim or defense, the Court must generally consider whether the conduct which is allegedly sanctionable was willful and whether, if sanctions are appropriate, there is a less severe sanction which will accomplish the desired purpose. *See Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir.1988).

When the issue is simply a party's failure to provide discovery responses with the

3

required amount of specificity, the Court would ordinarily not impose drastic sanctions, but would simply direct that the allegedly deficient responses be supplemented so that the defending party is better informed as to the bases of the claims asserted against it. *See, e.g., American Property Const. Co. v. Sprenger_Lang Foundation*, 274 F.R.D. 1 (D.D.C. 2011)(court addressed failure to provide complete information in response to discovery requests by directing the dilatory party to supplement its responses with the missing information). That type of order would not be sufficient, however, if the failure to have provided the information in a more timely fashion has severely prejudiced either the opposing party or the Court's ability to dispose of the case promptly. It goes without saying, however, that in order for the Court to impose any sanction at all, it must find that the discovery responses at issue are deficient.

Here, plaintiff argues strenuously in its opposing memorandum that it has responded clearly and completely to the questions about its trade secret claim. Some portions of that memorandum, such as an out-of-context quotation from one of defendants' discovery responses and its lengthy recitation of the defendants' own discovery failures, are not particularly on point and do not assist the Court in resolving the issue. However, the balance of its response persuades the Court that plaintiff's discovery responses have accomplished what they were intended to do, which is to give defendants fair notice of the essential details of the trade secret claim so that they can conduct appropriate discovery and file appropriate motions concerning the merits of the claim. It is important to note that the issue raised by defendants' motion is neither whether the trade secret claim advanced by plaintiff is overbroad or lacks merit, but simply whether it has been articulated in an understandable fashion. For the following reasons, the Court believes that it has.

4

Plaintiff notes that the trade secrets it claims in this case can be described as "combination trade secrets." As explained in *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398 (6th Cir. 2006), in a case which involves design drawings and engineering plans for specific products, a party may claim that the drawings and plans, as a whole, constitute trade secrets even if they contain some non-secret or public information. In fact, even if each separate component of a drawing or plan can be found in the public domain, the way in which those components are combined may well qualify for trade secret protection. Thus, the Court of Appeals held (in the context of a ruling about the sufficiency of evidence, and not in the context of the sufficiency of discovery responses) that in those circumstances "a plaintiff should not be obligated to identify which components of the protected material is secret." *Mike's Train House*, 472 F.3d at 411.

In their reply memorandum, defendants dispute that the information disclosed by plaintiff in discovery meets the *Mike's Train House* test. They attempt to distinguish that case on the grounds that here, not only has plaintiff not identified those specific items relating to each of the four products at issue, such as specifications, tolerances, data, reference points, dimensions, or alloys, which constitute trade secrets, it has not even identified the documents which contain that information. As a result, defendants claim that they are justified in seeking additional clarification concerning the trade secret claim.

Again, the Court disagrees. From the beginning, this case has been primarily, if not exclusively, about a certain set of drawings (approximately 300 in number) which defendants concededly took with them without plaintiff's permission and, for some period of time, used in the manufacture and production of four products - namely the products which plaintiff identified

5

in its interrogatory answers. The parties substantially disagree about whether those drawings or information derived from those drawings is still being used as part of defendants' manufacturing process. Nevertheless, it is abundantly clear from the interrogatory answers, supplements, the plaintiff's memorandum in opposition, and the many discussions held with the Court that the information on these drawings, and any other information needed to interpret or implement the drawings, such as separate lists of tolerances or specifications, are the matters for which plaintiff claims trade secret protection. Therefore, defendants are sufficiently aware that if they wish to defeat this claim, they have to show either that the process by which plaintiff manufactures these products (including drawings and specifications used in the manufacturing process) are not trade secrets, or that defendants have been able to develop a manufacturing process, including necessary drawings and specifications (which, of course, carry with them things such as dimensions, tolerances, and materials) independent of any information which they obtained from the plaintiff. If this were not the parties' mutual understanding of what this case involves, many of the prior discovery disputes and discovery orders would be incomprehensible. In fact, however, the progress of the case demonstrates that the parties, including the defendants, are well aware of the scope of the case including the essence of the trade secret claim.

This is not to say that plaintiff is free to argue that any and all information in its possession constitutes a trade secret (despite what its president may have testified to at his deposition). In fact, some of the information initially described as a trade secret, such as pricing information or customer lists, does not appear to have been identified with any particular specificity after the initial interrogatory answer made a vague reference to these items. The Court concludes that these items are no longer part of the trade secret claim, and that the claim is

currently confined to the way in which the four products at issue are designed and manufactured. To that extent, there is some small merit to defendants' motion. The Court does not believe that a particular order on that matter is necessary, however, because it interprets the plaintiff's response, which makes no mention of these items, to be a concession that plaintiff does not intend to pursue a trade secret claim with respect to anything other than the design and manufacture of the four specific products at issue in this case.

III.

For the reasons stated above, defendants' motion to exclude evidence (#111) is **DENIED**. The Magistrate Judge shall forthwith file a scheduling order which reflects the discussions had with counsel at the last status conference.

8-18-2011
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE