**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KENDALL HOLDINGS, LTD., d/b/a
PHPK TECHNOLOGIES,**

        **Plaintiff,**

    **v.**

**EDEN CRYOGENICS, LLC, et al.,**

    **Defendants.**

**Case No. 2:08-CV-390**

**JUDGE EDMUND A. SARGUS, JR.**

**FINAL INSTRUCTIONS TO THE JURY**

## TABLE OF CONTENTS

Province of the Court ...................................................................................................4

Province of the Jury .....................................................................................................5

All Persons Equal Before the Law ..............................................................................6

Duties of the Jury .........................................................................................................7

Evidence ........................................................................................................................8

Inadmissible and Stricken Evidence ...........................................................................9

Stipulations .................................................................................................................10

Direct Evidence; Circumstantial Evidence ...............................................................11

Inferences Defined .....................................................................................................12

Credibility of Witnesses ............................................................................................13

Burden of Proof ..........................................................................................................15

Preponderance of the Evidence .................................................................................16

"If You Find" or "If You Decide" .............................................................................17

Introduction of Claims ...............................................................................................18

Trade Secrets—General .............................................................................................19

Trade Secrets—Definition .........................................................................................20

Trade Secrets—Additional Information ....................................................................22

Trade Secrets—Equitable Estoppel ...........................................................................24

Misappropriation—Definition ...................................................................................26

Misappropriation—Subsequent Remedial Measures ................................................28

Misappropriation—Copyright Interest ......................................................................29

Misappropriation—Claims Against a Copyright Interest .........................................32

Misappropriation—Statute of Limitations ................................................................35

Damages—Generally ..................................................................................................37

Compensatory Damages .............................................................................................38

Additional Definitions ...............................................................................................41

Deliberations and Verdict—Introduction ..................................................................42

Duty to Deliberate .....................................................................................................43

Experiments, Research, and Investigation ....................................................................44

Form of Verdict.............................................................................................................45

Instructions and Form Do Not Recommend Any Particular Verdict............................46

Notify Court Security Officer When Verdict Is Ready ................................................47

Written Instructions ......................................................................................................48

## <u>PROVINCE OF THE COURT</u>

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, the time has come to instruct you as to the law governing the case.

Although you as jurors are the sole judges of the facts, you are duty bound to follow the law as stated in the instructions of the Court and to apply the law so given to the facts as you find them from the evidence before you.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law. Regardless of any opinion that you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court.

## PROVINCE OF THE JURY

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the Complaint of the plaintiff Kendall Holdings.

You are to perform this duty without bias or prejudice as to any party.  The law does not permit jurors to be governed by sympathy, prejudice, or public opinion.  The parties and the public expect that you will carefully and impartially consider all the evidence, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

## <u>ALL PERSONS EQUAL BEFORE THE LAW</u>

The case should be considered and decided by you as an action between parties of equal standing in the community, or equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial at your hands as a private individual.  All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.

## **DUTIES OF THE JURY**

Counsel may have referred to some of the governing rules of law in their arguments.  If, however, any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions, you are of course to be governed by the Court's instructions.

Nothing I say in these instructions is to be taken as an indication that I have any opinions about the facts of the case, or what that opinion is.  It is not my function to determine the facts, but rather yours.

## **EVIDENCE**

The evidence in this case consists of the sworn testimony of the witnesses and all the exhibits that have been received into evidence.  The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case: (1) statements and arguments of the attorneys; (2) questions and objections of the attorneys; (3) testimony that I instruct you to disregard; (4) anything you may see or hear when court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

You are to consider only the evidence in the case.  However, you are not limited to the bald statements of the witnesses—you are permitted to draw from the facts that you have found have been proved, and such reasonable inferences as seem justified in the light of your own experience.  This is to say, from the facts that have been proved, you may draw an inference based upon reason and common sense.

## **INADMISSIBLE AND STRICKEN EVIDENCE**

It is the duty of the lawyers to object when the other side offers testimony or other materials that a lawyer believes are not properly admissible in evidence.  If, during the course of the trial, I sustained an objection by one lawyer to a question asked by the other lawyer, you are to disregard the question and you must not guess about what the answer would have been.  If a question was asked and the witness answered it, and I ruled that you should not consider the answer, then you must disregard both the question and the answer in your deliberations just as if the question and answer had never been spoken.

## <u>STIPULATIONS</u>

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact.  A "stipulation" is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

## **DIRECT EVIDENCE; CIRCUMSTANTIAL EVIDENCE**

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case.  One is direct evidence—such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence—which applies to the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence.

## <u>INFERENCES DEFINED</u>

Inferences are deductions or conclusions that reason and common sense lead you to draw from facts that have been established by the evidence in the case.

## CREDIBILITY OF WITNESSES

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence that tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while on the stand. Consider the witness's observations, as well as whether he or she seemed to have an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent mis-recollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact. You may find that the

testimony of a small number of witnesses as to any fact is more credible than the testimony of a

larger number of witnesses to the contrary.

## BURDEN OF PROOF

The person who claims that certain facts exist must prove them by a preponderance of the evidence.  This duty is known as the burden of proof.

## <u>PREPONDERANCE OF THE EVIDENCE</u>

Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it.  A preponderance means evidence that is more probable, more persuasive, or of greater probative value.  It is the quality of the evidence that must be weighed.  Quality may, or may not, be identical with quantity.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all the evidence, regardless of who produced it.

If the weight of the evidence is equally balanced, or if you are unable to determine which side of an issue has the preponderance, the party who has the burden of proof has not established the facts necessary to prove the issue by a preponderance of the evidence.

## **"IF YOU FIND" OR "IF YOU DECIDE"**

When I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true.

## INTRODUCTION OF CLAIMS

This case is an action for misappropriation of trade secrets. The Plaintiff, New PHPK, asserts that the Defendants, Eden Cryogenics, LLC, Steve Hensley, and Jim Mitchell, misappropriated New PHPK's trade secrets.

New PHPK asserts its trade secrets consist of the unique combination of characteristics and components that embody the specifications, tolerances and diagrams for four standard products—its valve assemblies, bayonet assemblies, vacuum seal-off valves and associated operations, and cryogenic filters.

Defendant Hensley served as president of New PHPK and also of New PHPK's predecessor, Old PHPK, for a period of time.  Mitchell worked with both Old PHPK and New PHPK.  Hensley co-founded Eden and hired Mitchell as an independent contractor to create Eden's standard product shop drawings.  New PHPK asserts that the Defendants misappropriated New PHPK's trade secrets by disclosing and using New PHPK's engineering drawings to create a copycat line of standard products that the Defendants used to compete against New PHPK.

New PHPK further asserts that it has been damaged and that the Defendants have been unjustly enriched by the Defendants' conduct.

The Defendants deny that the information and materials that New PHPK claims are, in fact, trade secrets under the law.  The Defendants also deny that they misappropriated New PHPK's alleged trade secrets. The Defendants also claim that standard products are common in the cryogenic industry.

I will now instruct you more fully on the law and the issues you must address in this case.

## <u>TRADE SECRETS—GENERAL</u>

The Plaintiff claims that the Defendants misappropriated the Plaintiff's trade secrets. Before you can find for the Plaintiff, you must find by the greater weight of the evidence that the:

(A) information at issue is a trade secret; and

(B) one of the Defendants misappropriated the Plaintiff's trade secret by improper means; and

(C) the Plaintiff suffered actual loss proximately caused by the misappropriation.

## TRADE SECRETS—DEFINITION

"Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, improvement, business information, or plans that satisfies all of the following:

(A) the information derives independent economic value, actual or potential, from

(1) not being generally known to other persons who can obtain economic value from its use, and

(2) not being readily ascertainable by proper means by other persons who can obtain economic value from its use; and

(B) the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Some novelty, although a minimal amount, will be required for information to be considered a trade secret, if merely because that which does not possess novelty is usually known. Ohio law therefore allows consideration of the concepts of novelty, uniqueness, and obviousness in analyzing whether information is worthy of trade secret status, since these concepts reflect the level of secrecy and thus the protectability of the information.

If the information could be readily learned by legitimate methods, such as by reading publicly available literature or by examining publicly available products, or if the information is commonly known in an industry, no one may claim it as a trade secret. However, a trade secret can exist in a combination of characteristics and components, each of which, by itself, is commonly known or in the public domain. As long as the unified process, formula or design, is unique and affords its owner a competitive advantage, it is a trade secret.

In addition to the guidance on this issue so far, you may consider all of the following factors in determining whether the information is a trade secret:

(A) the extent to which the information is known outside the business;

(B) the extent to which it is known to those inside the business, such as by the employees;

(C) the precautions taken by the Plaintiff to guard the secrecy of the information;

(D) the value to the Plaintiff in having exclusive possession of the information;

(E) the amount of effort or money expended in obtaining and developing the information; and

(F) the amount of time and expense it would take for others to acquire and duplicate the information.

## TRADE SECRETS—ADDITIONAL INFORMATION

I provide some additional information to help guide you in determining whether the information at issue is a trade secret.

### REASONABLE EFFORTS TO MAINTAIN SECRECY; LIMITED DISCLOSURE

Regarding the precautions taken by the Plaintiff to guard the secrecy of the information at issue, the Plaintiff is required only to take reasonable steps under the circumstances to protect the trade secrets. This does not require absolute secrecy or that the Plaintiff use all conceivable efforts to maintain secrecy.  This does mean that a business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status.

Further, although none of the factors you have been provided controls by itself whether the alleged information is a trade secret, once material is disclosed publicly, it loses its status as a trade secret.  A limited disclosure, however, does not count as a public disclosure.  A limited disclosure to third parties, including suppliers or vendors, for a limited purpose does not result in the loss of trade secret protection because the holder of a trade secret may disclose it to another in confidence and under an implied obligation not to use or disclose it.

### READILY ASCERTAINABLE; REVERSE ENGINEERING

The definition of a trade secret that has been provided to you stated that a trade secret is, in part, information that is not readily ascertainable by proper means by other persons who can obtain economic value from its use.  One of the proper means a party can use to readily ascertain the information is through the process of reverse engineering.  Reverse engineering applies when a competitor acquires a product already released into the marketplace, and then disassembles it to determine the product's design features and technical specifications.  In other words, reverse

engineering describes the method by which competitors start with the known product and work backwards to find the method by which it was developed. Through reverse engineering, a competitor can acquire product information by fair and honest means.

## TRADE SECRETS—EQUITABLE ESTOPPEL

The Plaintiff asserts that Hensley and Mitchell are equitably estopped, or legally prevented, from arguing that the alleged trade secrets are not in fact trade secrets. It bases this argument on the fact that the drawings at issue contain the initials of Hensley and Mitchell; that their initials were placed near a legend stating the following—"Information shown on this drawing is proprietary and the sole property of PHPK and is not to be disclosed or transmitted to unauthorized parties." Mitchell and Hensley assert that they themselves did not place the initials on the drawings, and that the initials were only used to identify who performed the drawings.

Equitable estoppel precludes a party from asserting certain facts where the party, by its conduct, has induced another to change his position in good-faith reliance upon that conduct. The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. In this case, to find equitable estoppel prevents Hensley or Mitchell from arguing that the claimed trade secrets are not in fact trade secrets, you must find the following by a preponderance of the evidence:

(1) that Hensley's or Mitchell's actions led Richard Coleman, the owner of PHPK, to believe that one or both of them believed the alleged trade secrets were confidential or proprietary;

(2) that Hensley's or Mitchell's actions involved actual or constructive fraud;

(3) that Coleman changed his position in reliance on Hensley's or Mitchell's actions;

(4) that Coleman's reliance on Hensley's or Mitchell's actions was reasonable; and

(5) that Coleman's reliance on Hensley's or Mitchell's actions was to his detriment.

In assessing whether the facts meet these elements, you may consider several relevant factors. They include: the nature of the representation; whether the representation was in fact

misleading; the relative knowledge and experience of the parties; whether the representation was made with the intent that it be relied upon; and the reasonableness and good faith of the reliance, given all the facts and circumstances.

Also, "fraud" as used above means either actual or constructive fraud.  To constitute actual fraud, Hensley or Mitchell must have intended to deceive or mislead Coleman. Constructive fraud, on the other hand, means that Hensley's or Mitchell's conduct had a tendency to deceive Coleman and that, because of the relationship of the parties, their conduct constituted a breach of confidence or an implied obligation not to use or disclose the information at issue.

## MISAPPROPRIATION—DEFINITION

 "Misappropriation" means the:

(A) acquisition of another's trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of another's trade secret by a person who both lacked the express or implied consent of that other person and who:

>(1) used improper means to acquire knowledge of the trade secret; or

>(2) at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the Plaintiff to maintain its secrecy or limit its use; or

>(3) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"Person" as used above includes an individual or corporation.  The Plaintiff has asserted that three different parties misappropriated its trade secrets; they include Defendant Eden Cryogenics, LLC, Defendant Steve Hensley, and Defendant Jim Mitchell.

"Improper means" includes theft, bribery, misrepresentation, a breach of a duty to maintain secrecy, inducement of a breach of a duty to maintain secrecy, or spying through electronic or other means. This can include otherwise lawful conduct that is improper under the circumstances.

"Use" includes utilizing the trade secret through improper means to field competing products.

## <u>MISAPPROPRIATION—SUBSEQUENT REMEDIAL MEASURES</u>

You have heard evidence that Eden had standard product drawings before this case began and that Eden created new standard product drawings after the Plaintiff brought this lawsuit. You are not permitted to consider the fact that Eden created new drawings after the lawsuit was filed as evidence that the Defendants misappropriated any of the Plaintiff's alleged trade secrets.

The Plaintiff has alleged that Eden's new standard product drawings themselves constitute a misappropriation of the Plaintiff's alleged trade secrets. This instruction does not prohibit you from considering whether the Plaintiff has proven by a preponderance of the evidence that the Defendants misappropriated the Plaintiff's alleged trade secrets by creating or using Eden's new standard products drawings. Instead, this instruction prohibits you from considering the fact that Eden's new drawings were created after the lawsuit was filed as evidence that the Defendants misappropriated the Plaintiff's alleged trade secrets.

## <u>MISAPPROPRIATION—COPYRIGHT INTEREST</u>

As a defense against the Plaintiff's claim of misappropriation, the Defendants claim that Jim Mitchell possesses a copyright interest in the drawings he created or to which he contributed.

"Copyright" is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. You are probably accustomed to hearing the word "author" used for writers. But under the copyright law, any creator of an original work is referred to as the author. Copyright protection extends only to the expression of the ideas in the author's work, but never to the ideas themselves.

A copyright automatically exists in a work the moment the work is created, but only certain works can be copyrighted. The presence of a copyright symbol is evidence of but not a requirement of a valid copyright.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program. Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted. Although facts are not copyrightable, compilations of facts may be copyrightable based on the selection, coordination, and arrangement of the material. A "compilation" is a work formed by the collection and assembling of pre-existing materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers.

These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws.

The owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work; and

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

Copyright in a protected work vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work.

If you find that the Defendants have proven by a preponderance of the evidence that Mitchell possesses a copyright interest in any of the drawings he created or to which he contributed, then you must find in favor of the Defendants as to the Plaintiff's claim that the Defendants misappropriated those drawings.

## OWNER OF A COPYRIGHTED WORK

In order for the Defendants to prove that Mitchell owns a valid copyright in the drawings that he created or to which he contributed, the Defendants must prove the following by a preponderance of the evidence:

First: That Mitchell's work is original;

Second: Either that Mitchell is the author, or that Mitchell's relationship with the author permits him to claim ownership of the work.

The term "original," as used above, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.  The work does not need to be novel or new.  An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

## MISAPPROPRIATION—CLAIMS AGAINST COPYRIGHT INTEREST

The Plaintiff presents several claims that it contends prevent Mitchell from claiming a copyright interest in the drawings, even if you initially find that he does have a copyright interest in them.

### TRANSFER OF INTEREST

The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law.  So long as the parties' intent is clear, a transfer of copyright need not include any particular language.  According to this rule, if the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so; a one-line pro forma statement will do.

In order to find that Mitchell transferred his copyright interest in the drawings, you must find by a preponderance of the evidence that he signed a document that demonstrates his intent to transfer his copyright interest to another party.

### WORK-FOR-HIRE AGREEMENT

The "author" is the party who actually creates the work—that is, the person who translates the idea into a fixed, tangible expression entitled to copyright protection.  Under the doctrine of "works made-for-hire," copyright law allows a corporation or a person to claim copyright ownership of a work that was made by employees or independent contractors in what is called a "for-hire" relationship.  In other words, under this doctrine of "works made-for-hire," the employer or other person for whom the work was prepared is considered the author for purposes of copyright ownership.

In this case, if the work was made-for-hire for the Plaintiff, then the law considers the Plaintiff the copyright owner of the work.

The parties in this case have stipulated to the fact that Mitchell was an independent contractor during his time with the Plaintiff.  In order for you to find that the drawings at issue were "works made-for-hire," meaning that the Plaintiff would own the copyright in them,  you must find that Mitchell and the Plaintiff expressly agreed in a written instrument signed by them that the works shall be considered made-for-hire.

## EQUITABLE ESTOPPEL

The Plaintiff asserts that Mitchell is equitably estopped, or legally prevented, from arguing that he owns a copyright interest in the drawings at issue.  Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good-faith reliance upon that conduct.  The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.  In this case, to find that equitable estoppel prevents Mitchell from arguing that he owns a copyright interest in the shop drawings that he created or to which he contributed, you must find the following by a preponderance of the evidence:

(1) that Mitchell's actions led Coleman to believe that Mitchell believed the alleged trade secrets were proprietary;

(2) that Mitchell's actions involve actual or constructive fraud;

(3) that Coleman changed his position in reliance on Mitchell's actions;

(4) that Coleman's reliance on Mitchell's actions was reasonable; and

(5) that Coleman's reliance on Mitchell's actions was to his detriment.

In assessing whether the facts meet these elements, you may consider several relevant factors.  They include: the nature of the representation; whether the representation was in fact misleading; the relative knowledge and experience of the parties; whether the representation was

made with the intent that it be relied upon; and the reasonableness and good faith of the reliance, given all the facts and circumstances.

Also, "fraud" as used above means either actual or constructive fraud.  To constitute actual fraud, Mitchell must have intended to deceive or mislead Coleman.  Constructive fraud, on the other hand, means that Mitchell's conduct had a tendency to deceive Coleman and that, because of the relationship of the parties, his conduct constituted a breach of confidence or an implied obligation not to use or disclose the information at issue.

## MISAPPROPRIATION—STATUTE OF LIMITATIONS

If you find that the information at issue constitutes trade secrets, and if you find that one of the Defendants misappropriated the trade secrets, the Defendants assert as a defense that the statute of limitations bars or prohibits the Plaintiff's misappropriation of trade secrets claim.

A statute of limitations is a law providing that a lawsuit is barred or prohibited if the Plaintiff does not bring the lawsuit within a prescribed period of time.

According to the law in Ohio, the applicable statute of limitations for a misappropriation of trade secrets claim is four years.  That is, in order to meet the statute of limitations, an action for misappropriation must be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.

In this case, to find that the statute of limitations bars the Plaintiff's misappropriation claim, you must find the following by a preponderance of the evidence: the Plaintiff knew, or by the exercise of reasonable diligence should have known, more than four years before bringing this lawsuit that one of the Defendants misappropriated the Plaintiff's trade secrets.

For the purposes of this issue, the Defendants have the burden of proving the statute of limitations defense.  Further, the Plaintiff filed this case on April 24, 2008.

Also, as used above, "by the exercise of reasonable diligence should have known" refers to whether or not the Plaintiff had knowledge of such facts that would lead a fair and prudent person, using ordinary care and thoughtfulness, to make further inquiry that would have led to discovery of the alleged misappropriation.

Finally, a claim for misappropriation arises only once as to each Defendant, which is at the time of the initial misappropriation.  Based on this, a continuing misappropriation constitutes a single claim.  This means that each new misuse or wrongful disclosure is still part of a single

claim of continuing misappropriation.  This also means that the initial misappropriation is the relevant event for determining when the time period under statute of limitations begins.

A few additional instructions are relevant for the rest of the statute of limitations defense.

## SUCCESSOR-IN-INTEREST

A successor-in-interest is a transferee of a business in whole or in part.  In March of 2004, the Plaintiff purchased all of the assets, including shop drawings, from a company referred to in this case as Old PHPK, meaning that the Plaintiff is a successor-in-interest to Old PHPK. Accordingly, the Plaintiff is subject to all of the defenses that could have been raised by the Defendants against the Plaintiff's predecessor-in-interest, Old PHPK.

## IMPUTATION OF KNOWLEDGE

Knowledge as to an employer's business received by an employee in the ordinary course of business is imputed to the employer.  In other words, if a company's employee acquires knowledge of a fact related to the company's business, and the employee acquires that fact during the ordinary course of business, the company is deemed to have acquired that knowledge.

An exception exists if the employee acts adversely to the company.  That is, notice or knowledge on the part of the employee will not be imputed to the employer where the employee's relations to the subject-matter, his previous conduct, or his interests that are adverse to those of his employer demonstrate with certainty that he would not disclose such knowledge to his employer.

## <u>DAMAGES—GENERALLY</u>

I will now instruct you on the law of damages as it relates to the Plaintiff's claims. The fact that I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of the plaintiff by a preponderance of the evidence in the case in accordance with the other instructions.

## COMPENSATORY DAMAGES

If you find that one of the Defendants has misappropriated the Plaintiff's trade secrets, the Plaintiff may recover compensatory damages.  The Plaintiff has the burden of proving damages by the greater weight of the evidence.  Damages may include:

> (A)(1) the actual loss to the Plaintiff proximately caused by the misappropriation; and (2) the unjust enrichment to the Defendants caused by the misappropriation that is not taken into account in computing actual loss; or

> (B) a reasonable royalty.

You may return a verdict based on (A) or (B), but not both.

## ADDITIONAL INFORMATION

As you have been instructed previously, the Plaintiff must prove damages as part of its claim for misappropriation of trade secrets.  And as you have just been instructed, one of the ways the Plaintiff can do so is to show that it suffered actual loss proximately caused by the misappropriation.

"Actual loss" as used above means the Plaintiff's lost profits.

Again, the Plaintiff must show that its lost profits were proximately caused by the misappropriation.  "Proximate cause" is defined as an act or failure to act that in the natural and continuous sequence directly produced the injury, and without which the injury would not have occurred.  In this case, the Plaintiff claims that it lost sales and therefore lost profits because the Defendants misappropriated its trade secrets.  The Plaintiff contends that customers would have purchased its products if the Defendants did not have similar products—from the misappropriated trade secrets—in the market.  The Defendants contend that there are other competitors of the Plaintiff and that customers might have purchased the products of any number

of other competitors depending on the specific needs of the customer, and would not necessarily have purchased the Plaintiff's products even if the Defendants' products were not in the market.

Additionally, damages on the basis of lost profits may not be remote, uncertain, or speculative in nature.  On the other hand, damages do not need to be certain.  Once the fact of some damage has been shown, the Plaintiff need only prove its damages with reasonable certainty; however it must show substantial evidence to permit you to draw the reasonable inferences and make a fair and reasonable assessment of the amount of damages.

 If the Plaintiff can prove that its damages were proximately caused by the misappropriation, it may also be entitled to unjust enrichment damages.  "Unjust enrichment" means the value to the Defendants of the trade secret resulting from the misappropriation.  In determining this value, you may consider the following:

(A) the value to the Defendants of the secret at the time of misappropriation, such as what a reasonably prudent investor would have paid for the trade secret; or

(B) the value the Defendants derived from savings because of increased productivity; or

(C) the value the Defendants derived from savings in research costs; or

(D) the value the Defendants derived from savings in development costs; or

(E) the amount of the Defendants' profits resulting from the misappropriation.

As for "reasonable royalty," a royalty is a license to use the trade secret and measures the value of the trade secret to the defendant at the time that it was misappropriated, regardless of the commercial success of the enterprise.  You should calculate what the parties would have agreed to as a fair price for licensing the Defendants to put the trade secret to the use the Defendants intended at the time the misappropriation took place.  The royalty must be fair and reasonable

under the circumstances and in consideration of the loss to the plaintiff, the benefit to the

defendant, or both.

## <u>ADDITIONAL DEFINITIONS</u>

You will be asked to complete an interrogatory.  The following words will be included within the question asked.

"Clear and convincing" means that the evidence must produce in your minds a firm belief or conviction about the facts to be proved.  It must be more than evidence that simply outweighs or overbalances the evidence opposed to it.

"Willful" conduct requires an intent to do wrong.  Willful misconduct implies an intentional disregard of a clear duty or of a definite rule of conduct, a purpose not to discharge such duty, or the performance of wrongful acts with knowledge of the likelihood of resulting injury to the plaintiff.

"Malice" means a state of mind characterized by hatred, ill will, or a spirit of revenge; or a conscious disregard for the rights and safety of another person that has a great probability of causing substantial harm.

## <u>DELIBERATIONS AND VERDICT—INTRODUCTION</u>

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  I will finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

The first thing that you should do in the jury room is choose someone to be your foreperson.  The foreperson acts as the chairperson of the meeting and is your spokesperson in court.  He or she must see to it that the charges and the issues are taken up as given to you; that everyone has a chance to speak to these matters; and that your deliberations proceed in an orderly way.

After you have arrived at the verdict, which must be unanimous, the foreperson and all jurors will sign the verdict form on the lines as indicated.  Once you start deliberating, do not talk to the courtroom deputy, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, signed by any of you, and then give them to the court security officer, who will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

All of the exhibits will be sent to the jury room with you so you can review them during your deliberations.

One more thing about messages.  Do not ever write down or tell anyone outside the jury room how you stand on your votes.  For example, do not write down or tell anyone outside the jury room that you are split 6–2, or 7–1, or whatever your vote happens to be.  That should stay confidential until you are finished.

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

Listen carefully to what other jurors have to say, and then decide for yourself if the Plaintiff has proven its claim by a preponderance of the evidence.  Remember that, if you chose to take notes, the notes are for your personal use and should not be shared with other jurors.  It is important that each juror rely solely on his or her recollection and not on another juror's notes.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

## <u>EXPERIMENTS, RESEARCH, AND INVESTIGATION</u>

Remember that you must make your decision based only on the evidence that you saw and heard here in court.  Do not try to gather any information about the case on your own while you are deliberating.

For example, do not conduct any experiments inside or outside the jury room; do not bring any books, like a dictionary, or anything else with you to help you with your deliberations; do not conduct any independent research, reading, or investigation about the case; and do not visit any of the places that were mentioned during the trial.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry, or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, or Twitter; to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

Make your decision based only on the evidence that you saw and heard here in court.

## **FORM OF VERDICT**

The Court will provide you with the verdict form that you will have with you in the jury room.  I will now read this to you.

**<u>INSTRUCTIONS AND FORM DO NOT RECOMMEND ANY PARTICULAR VERDICT</u>**

I caution you that nothing said in these instructions and nothing in the verdict forms prepared for your convenience is to suggest or convey in any way the verdict I think you should return.  The verdict you return is your exclusive duty and responsibility as jurors.

### <u>NOTIFY COURT SECURITY OFFICER WHEN VERDICT IS READY</u>

When you arrive at a verdict, you will notify the Court Security Officer, who will inform the Court.

## WRITTEN INSTRUCTIONS

The written form of the instructions on the law I have just given you will be available to you in the jury room.

These instructions, which are contained in a three-ring binder, are placed in the charge of the foreperson you elect.

You are invited to use these instructions in any way that will assist you in your deliberations and in arriving at a verdict.

You may pass these instructions from juror to juror for individual reading and consideration, but you may not remove any one of the individual sheets from the binder.

These written instructions, which are in exactly the same language as I have given them to you orally, represent the law that is applicable to the facts, as you find the facts to be.

There is a table of contents on the first page of these instructions.  You may readily locate any particular instruction by referring to this list.