UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KENDALL HOLDINGS, LTD.,

    Plaintiff,

v.

EDEN CRYOGENICS LLC, *et. al.*,

    Defendants.

Case No. 2:08-cv-00390
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants Eden Cryogenics LLC ("Eden") and Steve Hensley's ("Hensley") (collectively, "Defendants") Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial (Doc. 278) and Defendants' Motion for a New Trial (Doc. 284). Defendants move, pursuant to Federal Rule of Civil Procedure 50, for judgment as a matter of law following a jury trial verdict in favor of Plaintiff Kendall Holdings, Ltd. d/b/a PHPK Technologies ("Plaintiff" or "PHPK"). Alternatively, in the same motion, Defendants move for a new trial under Rules 50(b) and 59. Additionally, Defendants move separately for a new trial, pursuant to Rule 59.

For the reasons that follow, Defendants' Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial is **DENIED**. Defendants' Motion for a New Trial is also **DENIED**.

### I.

The Court has previously recited the facts of this case at length. *See Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 846 F. Supp. 2d 805, 810-12 (S.D. Ohio 2012). A brief summary is as follows: PHPK brought this suit against Defendants Eden and several of its employees for

misappropriation of trade secrets. Both companies deal in the cryogenics industry. Cryogenics companies manufacture and supply items such as valves, bayonets,[1] and vacuum-insulated piping. The industry refers to the valves and bayonets as "standard products." *See* Doc. 133-3, at 211. In order to construct these product lines, companies in the industry utilize professionally drafted design and engineering drawings, known as "shop drawings." PHPK maintains that Defendants misappropriated trade secrets by impermissibly retaining shop drawings for lines of its standard products.

This case was tried to a jury from October 8-22, 2014. The jury returned a verdict in favor of PHPK against all of the Defendants, finding that Defendants willfully and maliciously misappropriated PHPK's trade secrets. The jury awarded compensatory damages against Eden in the amount of $887,000; Hensley in the amount of $150,000; and defendant James Mitchell ("Mitchell") in the amount of $10,000. PHPK subsequently moved for punitive damages, which the Court granted, ordering punitive damages against Eden in the amount of $250,000; and Hensley in the amount of $75,000 (Doc. 270). Defendants[2] now move for the Court to enter judgment in their favor as a matter of law, or alternatively, for a new trial, on PHPK's trade secret misappropriation claim, pursuant to Federal Rule of Civil Procedure 50. Defendants also move separately for a new trial, pursuant to Rule 59.

## II. MOTION FOR JUDGMENT AS MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL

The Court first addresses Defendants' motion for judgment as a matter of law, or alternatively, for a new trial. Defendants base their motion on the grounds that PHPK failed to demonstrate a legally sufficient basis for a reasonable jury to find in its favor on its trade secret misappropriation claim.

---

[1] A "bayonet," in the cryogenics industry, is a device used to connect two sections of vacuum-insulated piping.
[2] Mitchell has satisfied the judgment against him and does not join in the instant motions.

2

Fed. R. Civ. P. 50 provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment-or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged-the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

During trial, the Court denied Defendants' Rule 50(a) motion, and Defendants have timely renewed that motion, pursuant to Rule 50(b).

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). Here, Ohio law applies.[3] *See Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, 521 F. App'x 453, 456 n. 4 (6th Cir. 2013).

The standard for judgment as a matter of law under Ohio law is as follows:

> The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*Super Sulky*, 174 F.3d at 741. The Court will direct a verdict in a defendant's favor, "when there is no evidence tending to prove an essential element of the plaintiff's cause of action."

---

[3] The parties dispute whether federal or Ohio state law applies to Defendants' judgment as a matter of law motion. The Court notes that, due to similarities between the two standards, the outcome of the instant motion would be the same. However, the Court is governed by Sixth Circuit precedent adhering to the minority rule that, in federal court diversity cases, "state law governs the standard for granting motions for directed verdicts and judgments notwithstanding the verdict." *Super Sulky*, 174 F.3d at 741.

*Chemclear Inc. v. Ameriwaste Envtl. Servs., Inc.*, No. 60996, 1992 WL 166548, at *4 (8th Dist. Ohio Ct. App. Jul. 16, 1972). Notably, the standard "is not substantially different from that used under Rule 50(b) of the Federal Rules of Civil Procedure." *Super Sulky*, 174 F.3d at 741.

### A. Whether PHPK's Drawings Qualify as Trade Secrets

To qualify as a trade secret under the Ohio Uniform Trade Secrets Act ("OUTSA"), the information must have the following characteristics:

> "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Ohio Rev. Code § 1333.61(D).

Defendants claim that PHPK's drawings do not satisfy the requisite definition because: (a) PHPK is estopped from asserting that the drawings have economic value; (b) they are not novel or unique to the industry; (c) they are readily ascertainable by competitors through reverse engineering; and (d) PHPK did not undertake reasonable efforts to maintain their secrecy. The Court does not agree.

Defendants thoroughly discuss the evidence presented at trial to demonstrate both the similarity between PHPK and other manufacturers' products, as well as the security procedures PHPK declined to employ. However, the applicable standard does not provide for review with an emphasis on the evidence from the moving party, but rather a review of the sufficiency of the evidence on each element of the claim. *See Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996) (applying Ohio Civ. P. 50(A)(4)). The Court is not charged with performing a balancing test between the two sets of evidence—that would improperly encroach upon the jurors'

province as the sole arbiters of which factual evidence is most convincing. *See Super Sulky*, 174 F.3d at 741. The question is not whether the Defendants presented more compelling evidence than PHPK, but whether PHPK "fail[ed] to adduce evidence on *any* of the essential elements of its claim." *Anchor*, 94 F.3d at 1023.

Defendants first argue that PHPK should have been estopped from attributing any value to the drawings because PHPK's President, Richard Coleman, ("Coleman") filed a tax return to the Internal Revenue Service ("IRS") in 2003, ascribing a $0 value to the drawings. However, Plaintiff presented evidence at trial that the $0 assignation was prescribed by IRS instructions to its Form 8594 and not an admission on behalf of PHPK that the drawings had no monetary value. Both an expert witness and Coleman testified that, as a result of a fire sale, Coleman purchased PHPK for far less than the company was worth. When reporting the sale to the IRS, Coleman was required to attribute value to the asset classes belonging to the company, but could not exceed the total amount he had paid for the purchase. As a result, the asset classes were ascribed value in the order in which they were listed on the form until the total value added up to the (admittedly low) purchase price, and beyond that, asset classes were ascribed $0 value. Based on the testimonial evidence, a reasonable juror could have concluded that the $0 value on Form 8594 was the result of required accounting procedure for reporting the sale of PHPK that year rather than a party admission.

Defendants next argue that PHPK's drawings lack independent value because they are generally known in the industry. Defendants point to testimony that PHPK's drawings were based on those of leading cryogenics company, CVI, and testimony by Defendants' expert witness, David-John Roth, that the drawings are so similar to others used industry-wide, they are generally known. At trial, multiple witnesses testified as to differences between PHPK's

standard products and those belonging to PHPK's competitors, including explanation about how the products perform differently. Defendants themselves admit that testimony from Plaintiff's employees did not call CVI and PHPK products "identical." Despite their basis of origin in CVI's products—and the fact that, as a result, PHPK products share some of the same features and dimensions—witnesses testified that Plaintiff's products ultimately had differences in significant aspects from competitors' products, such as heat leak values. As a result, jurors heard sufficient evidence to make a reasonable determination in favor of Plaintiff that PHPK's drawings were not generally known.

Defendants also argue that PHPK's standard product drawings do not constitute trade secrets because they may be reverse engineered. Once again, Plaintiff presented testimonial evidence at trial to rebut this assertion, including from its expert, Dr. Robert Sturges. Dr. Sturges testified that it would be impossible to cut open the products, which is necessary in order to determine the internal measurements and tolerances, without obliterating the very information sought after. Thus, a reasonable juror could conclude that PHPK's products may not be readily ascertained through reverse engineering.

Finally, Defendants argue that PHPK did not take reasonable steps to keep their drawings a secret. Defendants point to the Ohio Supreme Court's opinion in *Valco Cincinnati, Inc. v. N&D Machining Serv., Inc.* as setting forth the types of safeguards necessary to protect trade secrets. 24 Ohio St. 3d 41 (1986). *Valco* identified: (1) locking the facility housing the information; (2) screening visitors into the building; (3) prohibiting entry to the general public or competitors; (4) making the information available to suppliers for the limited purpose of bidding on or manufacturing parts; (5) making drawings available only to employees with a specific job performance need; (6) marking drawings that left the facility with a proprietary restriction; and

(7) obtaining non-disclosure agreements from employees, as demonstrating reasonable efforts to protect trade secrets. *Id.* at 47.

The Court agrees with Plaintiff that *Niemi v. NHK Spring Co., Ltd.* is controlling on this point. 543 F.3d 294, 302-303 (6th Cir. 2008). Applying Ohio law, the Sixth Circuit found that *Valco* "cannot be read as establishing a mandatory minimum standard below which any efforts taken are necessarily deemed insufficient or unreasonable as a matter of law." *Id.* at 302. The Court held that where a plaintiff presented evidence during trial that it took some of the precautions identified in *Valco*, but not all, a reasonable juror could conclude that reasonable steps were taken to safeguard the secrecy of the information in question. *Id.* at 303. As in *Niemi*, here, PHPK witnesses testified that the company took some of the precautions enumerated in *Valco*—for example, locking its building and restricting access to the general public; requiring visitors to sign in with a receptionist and be escorted by a PHPK employee throughout the building; limiting access to the drawings to essential employees working with the drawings; not distributing the drawings to customers; distributing limited drawings to a fabricator only for the fabrication of the product; marking drawings as proprietary; and entering confidentiality agreements with independent contractors working with PHPK's products. When presented with this evidence, a reasonable juror could find that the measures taken were sufficient to protect the secrecy of its trade information.

As a result, it was reasonable for the jury to find that the PHPK drawings constituted trade secrets.

### B. Whether PHPK's Drawings Were Misappropriated

Defendants assert that they could not have misappropriated PHPK's drawings because they were authorized to use and possess the drawings. Defendants' reasoning is threefold: (1)

PHPK authorized Mitchell to copy and retain the drawings; (2) Mitchell has a copyright interest in the drawings because he prepared them; and (3) Hensley and Eden received the drawings from Mitchell who had neither acquired them by way of improper means nor under a duty to maintain their secrecy. These arguments also fail.

Evidence was presented at trial that PHPK did not authorize Mitchell to copy and retain the drawings, in the form of: (a) early testimony from both Mitchell and Hensley; and (b) documentation showing the drawings were stamped proprietary and as the sole property of PHPK. Again, it is not the Court's bailiwick to weigh whether later or contrary evidence presented by the Defendants was more convincing, only to find, as it does, that the Plaintiff produced sufficient evidence to sway a reasonable fact finder in its favor. Plaintiff also presented evidence that Mitchell retained no copyright interest in the drawings because he signed his initials to the drawings after they had already been stamped as proprietary and solely owned by PHPK. A reasonable juror could conclude that Mitchell either did not have a copyright interest or gave away his copyright interest in the PHPK drawings. Mitchell was also bound by an agreement he signed with PHPK stating that the drawings he created were the sole property of PHPK and prohibiting him from divulging PHPK's information to third parties.

Based on the above, it was reasonable for the jury to find in favor of the Plaintiff that Defendants misappropriated PHPK's trade secrets.

### C. Statute of Limitations

Next, Defendants argue that the statute of limitations bars Plaintiff's claims. This argument also fails because the inquiry rests on believability of the evidence presented by both sides at trial.

The OUTSA has a four-year statute of limitations. Ohio Rev. Code § 1333.66. All

8

claims must be brought within four years from the date "the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." *Id.* The Sixth Circuit has defined "reasonable diligence," in this context, as "when the trade secret's owner *could have* discovered the misappropriation." *Adcor Indus., Inc. v. Bevcorp., LLC*, 252 F. App'x 55, 60 (6th Cir. 2007).

As a threshold matter, the jury heard contradicting evidence as to the time of discovery of the misappropriation. Initial testimony from Hensley stated that he did not know Mitchell took the drawings upon leaving PHPK in 1999, and he first learned of it after a lawsuit was filed in 2006. If that were the case, PHPK's complaint in this action, filed in 2008, was timely. Later, the jury heard testimony that Hensley authorized Mitchell to take the drawings from PHPK when the latter left in 1999. As Plaintiff points out, the jury could have believed either version of the story. If the jury believed that Hensley gave Mitchell authorization, Plaintiff proffered, no improper usage of the drawings occurred until 2004 when Hensley was terminated from PHPK and solicited Mitchell's assistance in copying PHPK's drawings.

Thus, under multiple factual theories presented to the jury through trial testimony, it was reasonable to conclude that the statute of limitations does not bar Plaintiff's claim.

**D. Proximately Caused Damages**

Defendants next assert that no reasonable jury could find that PHPK proved damages to a reasonable degree of certainty. Three experts and Coleman testified as to the damages caused by Defendants' misappropriation. Defendants assert that Coleman's testimony was speculative and that the testimony of the experts was based on factually incorrect underlying assumptions and flawed analyses and calculations.

With respect to Ken Kreinbrink ("Kreinbrink") and Dr. Sturges' testimony, Defendants

simply state that they reincorporate arguments made in their *Daubert* motions (Docs. 133; 135) and motions made during trial. The court incorporates its rulings in its September 24, 2013 Opinion and Order on the testimony of Kreinbrink and Dr. Sturges (Doc. 228) as well as orders on motions made during trial. The Court finds no reason to modify its orders with respect to both witnesses.

With respect to Heinz Ickert's ("Ickert") testimony, Defendants argue that it is based on factually inaccurate assumptions and that the methodology he employed was unreliable. Defendants also argue that Coleman's testimony was speculative and contradictory. These arguments speak to the admissibility of Coleman's testimony and Ickert's qualifications as an expert witness, rather than the inadequacy of the evidence at trial proving proximately caused damages. The Court does not find that the testimony of Coleman or Ickert was entered into the record improperly, or that Defendants were prejudiced by such testimony.

A reasonable jury could find that the testimony of the four witnesses presented by PHPK proved proximately caused damages to a reasonable certainty.

### E. Willful and Malicious Misappropriation

Finally, Defendants argue that they are entitled to judgment as a matter of law, or a new trial in the alternative, because a reasonable juror could not have found sufficient evidence that the Defendants' misappropriation was "willful" and "malicious." *See* Ohio Rev. Code § 1333.63(B).

In order to award punitive damages in a trade secret case under Ohio law, the plaintiff must establish that the defendant acted with malice. *Avery Dennison Corp., v. Four Pillars Enterprise Co.*, 45 F. App'x 479, 489 (6th Cir. 2002) (citing *Pyromatics v. Petruziello*, 7 Ohio App. 3d 131, 454 N.E.2d 588 (1983)). "Malice does not require, however, an intent to injure.

The element of malice can be established by proof of conscious, deliberate, or intentional wrongdoing, or by showing that the defendant had a conscious disregard for the rights of other persons." *Id* (internal citation omitted).

Here, the jury heard ample evidence of Defendants' behavior constituting willful and malicious misappropriation, including but not limited to, representations made by Eden and Hensley throughout the trial that were later called into question, such as that they: created a new standard set of product drawings without using PHPK's; copied only certain PHPK drawings; and no longer had PHPK drawings in their possession after 1999. Plaintiff also produced evidence that Defendants altered documents before producing them to PHPK. Therefore, it was reasonable for the jury to find that the misappropriations by Defendants were willful and malicious.

For the reasons stated, Defendants' Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial is **DENIED**.

### III. RULE 59 MOTION FOR A NEW TRIAL

Federal Rule of Civil Procedure 59 provides that a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States ..." Fed. R. Civ. P. 59(a)(1). The Rule has been interpreted to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by one or more of the following: "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir.), *cert. denied*, 519 U.S. 935, 117 S. Ct. 312, 136 L.Ed.2d 228 (1996). In some circumstances, incorrect rulings

on the admissibility of evidence may satisfy the third situation. *Id.* Further, if an error is harmless, it is not grounds for a new trial. *Morales v. American Honda Motor Co.,* 151 F.3d 500, 514 (6th Cir.1998). In other words, even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have resulted in a different outcome at trial. *Id.*

### A. Verdict Against Weight of Evidence

When the request for a new trial is premised on the ground that the verdict was against the weight of the evidence, the Court may not grant a new trial "unless that verdict was unreasonable." *Id.* at 1047. "[I]f a reasonable juror could reach the challenged verdict, a new trial is improper." *Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 820 (6th Cir.2000), citing *Holmes,* 78 F.3d at 1048.

Defendants argue that the verdict is against the weight of the evidence. Having considered and denied Defendants' motion for judgment as a matter of law as to the jury's finding of willful and malicious misappropriation of trade secrets and PHPK's proximately caused and punitive damages, the Court finds a reasonable juror could reach each of the elements of the verdict and declines to grant a motion for a new trial on these bases.

### B. Excessive Damages

Defendants assert that the damages awarded by the jury are excessive in light of the evidence presented at trial. Ohio law states that compensatory damages for misappropriation of trade secrets may include both the actual loss caused by the misappropriation and any unjust enrichment also caused by the misappropriation that is not taken into account in computing actual loss. Ohio Rev. Code § 1333.63(A). Defendants argue that the damages are excessive

because the jury improperly included both lost profits and an erroneously calculated number for unjust enrichment, which was already taken into account in the lost profit calculation.

Plaintiff responds that it is mere speculation that the jurors arrived at the $1,047,294 verdict by adding the lost profits calculation of Ickert to Dr. Sturges' calculation of the amount it cost to create the PHPK drawings from scratch. The Court agrees. Multiple figures were presented to the jury regarding unjust enrichment and it is not possible to retroactively deduce how the verdict was calculated. The Court finds that the verdict could have been determined from a variety of methodologies incorporating damages numbers presented to the jury. The damages were, therefore, not excessive.

### C. Evidentiary Rulings

#### 1. Kreinbrink and Dr. Sturges

Defendants re-assert their argument that the testimony of Kreinbrink and Dr. Sturges was improperly admitted. As the Court previously held regarding the testimony of Kreinbrink and Dr. Sturges' (Doc. 228), Kreinbrink's methodologies were reliable, based on his previous experience of preparing cost estimates and job bids for cryogenics jobs; his knowledge of how other companies prepare their bids; his knowledge and experience of how the products were built and designed; and on the process he follows when applied to different lines of products. The Court also finds once again that Dr. Sturges' methodology meets proper reliability standards based on the strength of his past experience and his explanation of how he reached his conclusions. The testimony of Kreinbrink and Dr. Sturges was properly admitted and does not constitute reversible error.

#### 2. Ickert

Defendants next assert that Ickert's testimony regarding the allocation of the purchase price of PHPK and that Coleman appropriately reported the allocation to the IRS was improperly admitted and significantly prejudiced the trial outcome. First, Defendants proffer that Ickert's testimony regarding the purchase price allocation of PHPK in the Asset Purchase Agreement was a new opinion. However, Ickert offered the same testimony at his deposition and the parties addressed this testimony in briefing on Defendants' motion for summary judgment (*See* Doc. 159, at 60).

Pursuant to Federal Rule of Civil Procedure 26(a), a party is required to disclose, in a timely manner, the names of—and other information relating to—potential trial witnesses. Moreover, Rule 26(a)(2) includes specific disclosure requirements for expert witnesses. Rule 37, the enforcement mechanism for Rule 26 requirements, provides in pertinent part "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Sixth Circuit has recognized that "[h]armlessness, however, is the key under Rule 37, not prejudice. The advisory committee's note to Rule 37(c) strongly suggests that harmless involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer v. Davis,* 317 F.3d 686, 692 (6th Cir.2003) (internal quotations omitted).

Ickert's deposition was taken on August 30, 2011 (Doc. 141) and the summary judgment motion was completed by January 17, 2012 (Doc. 177). Defendants therefore had ample time to prepare for Ickert's testimony before trial and its admission was not reversible error.

Defendants also argue that Ickert should not have been permitted to testify at trial that Coleman's tax returns appropriately listed the value of his purchase of PHPK. The Court has

14

previously addressed this point as to Coleman's testimony (*see supra*, at II.A), and it finds that Ickert's testimony on the same subject at trial was properly limited to testimony he offered at his deposition.

### 3. Philip Korodi

Defendants contend that the Court should have allowed Phillip Korodi ("Korodi") to testify regarding a conversation Korodi had with Kreinbrink in which Kreinbrink stated that he had taken PHPK shop drawings. The Court does not agree. The testimony was offered for the truth of the matter asserted, rather than the fact that the conversation took place, and was properly excluded as hearsay. *See* Fed. R. Evid. 801. It did not fall within the Federal Rule of Evidence 801(d)(2)(D) exception to hearsay as an admission by an opposing party because Kreinbrink was not employed by PHPK at the time he made the statement. Korodi testified that the conversation took place in December 2003 or January 2004, shortly after the first iteration of PHPK had closed (Doc. 139-9, at 118-19). Kreinbrink did not start working at the new PHPK until it opened in March 2004.

Defendants also contend that the Court should have allowed Korodi to testify regarding confidentiality measures taken at his former place of employment, North American Rockwell, to protect the confidentiality of shop drawings. Korodi's testimony, however, was properly excluded as irrelevant.

Federal Rule of Evidence 402 permits only relevant evidence to be introduced at trial. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Whether PHPK took sufficient steps to safeguard the secrecy of its trade information is an element of the

15

cause of action of misappropriation of trade secrets. *See supra*, at II.A. Evidence of customary practice in the industry bears on the reasonableness of confidentiality efforts in this context. *See e.g. Niemi*, 543 F.3d at 300; *Hoffman-La Roche Inc. v. Yoder*, 950 F. Supp. 1348, 1361 (S.D. Ohio 1997). Korodi's work, though, for North American Rockwell was not within the cryogenics industry. (Doc. 139-9, at 10-12). His testimony as to secrecy measures employed by North American Rockwell was, as a result, not relevant to the question of whether PHPK employed adequate measures and its exclusion is not grounds for a new trial.

### 4. Jury Instructions

Defendants' final argument pertains to jury instructions. Defendants assert that the Court committed three errors with respect to the final instructions: (1) instructing the jury that a limited disclosure of trade secret information to third-parties does not result in the loss of trade-secret status; (2) giving jury instructions on equitable estoppel; and (3) failing to instruct the jury on estoppel as it related to PHPK's valuation of its standard product drawings and Coleman's tax filing.

An instruction given to the jury by the district court "is not plainly erroneous unless there was an egregious error, one that directly leads to a miscarriage of justice." *United States v. Daniels*, 653 F.3d 399, 409 (6th Cir.2011). "A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 901 (6th Cir. 2004). "A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Tompkin*, 362 F.3d at 901 (quoting *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000)).

16

Defendants argue that the Court's limited disclosure instruction (Doc. 243, at PAGEID # 6881) is inconsistent with Ohio law because it did not provide any distinction between a reasonable disclosure and an unreasonable disclosure of trade secret material to third-parties with respect to the loss of trade secret protection. The Court finds, however, that the general language of the jury instruction describing that a "limited disclosure to third parties, including suppliers or vendors, for a limited purpose *does not* result in the loss of trade secret protection" does not improperly instruct the jury that PHPK's disclosures of its shop drawings were reasonable. The jury could have decided that PHPK's disclosures constituted "limited" disclosures, thus, trade secret protection was not destroyed, or that the disclosures resulted in unreasonable efforts to maintain the confidentiality of the drawings, nullifying trade secret protection. The wording of the instruction is generic, and the Court finds Defendants have not shown its issuance was an egregious error.

Defendants next argue that the instructions on equitable estoppel to the jury (Doc. 243, at PAGEID # 6883-84, 6892-93) were improper because PHPK failed to present evidence of the required elements of equitable estoppel during trial. The equitable estoppel instructions related to PHPK's argument that the Defendants were estopped from claiming that the drawings were trade secrets because Hensley and Mitchell initialed the drawings; and PHPK's argument that Mitchell was equitably estopped from asserting a copyright interest in the drawings he drew.

The applicability of equitable estoppel is contingent upon evidence that Hensley or Mitchell engaged in either actual or constructive fraud. *See State ex rel. Shisler v. Ohio Pub. Employees Ret. Sys.*, 122 Ohio St. 3d 148, 153 (2009). Constructive fraud can be proven through gross negligence, rather than a fraudulent intent. There must also be evidence of justifiable

17

reliance. *See e.g., Atkinson v. Akron Bd. Of Educ.*, 9th Dist. No. 22805, 2006-Ohio-1032, ¶ 19; *Doe v. Blue Cross/Blue Shield of Ohio*, 79 Ohio App. 3d 369, 379 (10th Dist. 1992).

Contrary to Defendant's assertions, the jury heard evidence that Hensley and Mitchell had engaged in constructive fraud through signing their initials to the PHPK drawings, which are marked in legends to the drawings as proprietary and the sole property of PHPK. Defendants respond that the evidence is not uncontroverted because Hensley and Mitchell both testified that their initials signified only their preparation of the drawings, and not an assent to the statements in the legends. However, the Court may not re-weigh the credibility of evidence. Here, the jury could have determined that the initials on the drawings were more persuasive of acquiescence to the legend statements than Hensley and Mitchell's testimony in contradistinction. It was not error to permit this instruction.

Evidence was also presented that Coleman justifiably relied on Mitchell and Hensley's representations—in the form of testimony from Coleman that when he purchased the company, he understood the drawings to be confidential, proprietary, and trade secret information as the sole property of PHPK. He further testified that he relied on the representation when he chose to hire Hensley and Mitchell, which he would not have done had he known they asserted a property interest in the drawings. Defendants respond that other testimony from Coleman demonstrates he did not see the drawings before he purchased the company or rely on the representations. But, the jury may have found his testimony that he did more convincing. Sufficient evidence was presented such that the issuance of the instruction on equitable estoppel is not reversible error.

Finally, Defendants argue that the Court wrongfully refused to give an instruction on estoppel related to PHPK's assertion that the drawings had economic value (Doc. 204, at PAGEID # 6484), based on Coleman's submission of Form 8594 to the IRS. Defendants'

argument fails because the absence of the instruction was not prejudicial. The instruction states that in order for estoppel to apply, Defendants must have proven, by a preponderance of the evidence, that: (1) PHPK represented to the IRS that the alleged trade secrets had no value; and (2) PHPK received the benefit it was seeking from making that representation. In order for the jury to find in favor of PHPK on its misappropriation of trade secrets claim, it had to weigh the very same evidence and questions. The jury had to consider the credibility of Defendants' argument that Form 8594 constituted a representation by PHPK to the IRS that the drawings had a $0 value and make a determination that the drawings did, in fact, have an independent economic value. If the jury had decided that the drawings had no value, the misappropriation claim would have failed—just as it would have failed had the jury decided PHPK was estopped from arguing that the drawings had value. The Court finds no reversible error in the exclusion of this instruction.

## IV.

For the reasons stated above, Defendants' Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial (Doc. 278) and Motion for a New Trial (Doc. 284) are **DENIED** with prejudice.

**IT IS SO ORDERED.**

4-17-2015
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT CHIEF JUDGE**